2005 ME 46

**STATE of Maine**

v.

**Alphonso C. JOHNSON.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Dec. 8, 2005.

Decided: April 5, 2005.

Evert N. Fowle, Dist. Atty., Alan P. Kelley, Dep. Dist. Atty., Augusta, for State.

Andrews B. Campbell, Campbell Law Offices, P.C., Waldoboro, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, and CALKINS, JJ.

CALKINS, J.

[¶ 1] Alphonso C. Johnson appeals from a judgment of conviction of aggravated trafficking in scheduled drugs (Class A), 17–A M.R.S.A. § 1105(1)(B) (Supp.2001),[1] entered in the Superior Court (Kennebec County, *Atwood, J.*) after a jury trial. Although Johnson contends that the court erred in several respects,[2] we address only his contentions regarding the amendment and wording of the indictment, and we affirm the judgment.

## I. BACKGROUND

[¶ 2] In the summer of 2002, Johnson was operating his motor vehicle over the posted speed limit when he was stopped by a police officer who then learned that Johnson was wanted on a Massachusetts arrest warrant. The officer placed Johnson and his female passenger in the cruiser. Two police officers then searched Johnson's vehicle, and they found and seized a plastic bag containing what they believed to be cocaine. Johnson was arrested and subsequently indicted.

[¶ 3] The indictment alleged:

On or about July 7, 2002, in Augusta, Kennebec County, Maine, ALPHONSO C. JOHNSON, did intentionally or knowingly traffick in what he knew or believed to be a scheduled drug, which was in fact crack cocaine, a schedule W drug. ALPHONSO C. JOHNSON was convicted of Sale of Controlled Drug on June 15, 1994, in the Rockingham County Superior Court, Rockingham County, New Hampshire, Docket No. 94–S–415, an offense relating to scheduled drugs and punishable by a term of imprisonment of more than one year.

The indictment listed several statutes. It cited to 17–A M.R.S.A. § 1103(1) (Supp. 2001),[3] which read in pertinent part: "A person is guilty of unlawful trafficking in a scheduled drug if the person intentionally or knowingly trafficks in what the person

---

1. Title 17–A M.R.S.A. § 1105 has since been repealed by P.L. 2001, ch. 383, § 118 (effective Jan. 31, 2003), and replaced by P.L. 2001, ch. 383, § 119 (effective Jan. 31, 2003) (codified at 17–A M.R.S.A. §§ 1105–A to 1105–D (Supp.2001)). Title 17–A § 1105–A, which addresses aggravated trafficking, was then amended by P.L. 2003, ch. 688, § B–3 (effective May 6, 2004) (codified at 17–A M.R.S.A. § 1105–A (Supp. 2004)).

2. Johnson also claims that the court should have granted his motion to suppress evidence obtained by the police after the stop of his motor vehicle and the search of an area under the dashboard, which was accomplished by the removal of a panel while Johnson was in the police cruiser. The suppression court (*Marden, J.*) found that the search was reasonable under *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). Johnson contends that his facts are distinguishable from *Belton*, but we disagree.

Johnson, an African–American, further argues that the court erred in its manner of jury selection and that the jury composition violated his right to a jury of his peers. We find the

contention without merit. We also find without merit his claim that the court erred in instructing the jury on joint possession because it had a tendency to confuse the jurors. Finally, we also conclude that Johnson cannot prevail on his sentence appeal. The court found that a basic sentence of eight years imprisonment was appropriate, and after weighing the aggravating and mitigating factors, it imposed a sentence of twelve years. It suspended all but seven years and placed Johnson on probation for six years. Johnson contends that the court unlawfully double-counted his prior conviction in that it was considered both as an enhancement elevating the class of crime and as an aggravating factor. We determine that the court neither misapplied principle nor abused its discretion in the sentence.

3. Title 17–A M.R.S.A. § 1103(1) has since been repealed by P.L. 2001, ch. 383, § 114 (effective Jan. 31, 2003), and replaced by P.L. 2001, ch. 383, § 115 (effective Jan. 31, 2003) (codified at 17–A M.R.S.A. § 1103(1–A), (1–B) (Supp. 2004)).

knows or believes to be a scheduled drug and that is in fact a scheduled drug." The indictment also cited to 17–A M.R.S.A. § 1103(2)(A) (Supp.2001),[4] which stated that trafficking in a schedule W drug was a Class B offense. Finally, the indictment cited 17–A M.R.S.A. § 1105(1)(B) (Supp. 2001), which stated that a prior conviction relating to scheduled drugs punishable by a term of imprisonment of a year or more elevated the Class B offense of trafficking to a Class A offense of aggravated trafficking.

[¶ 4] A jury trial was held, lasting four days with several witnesses. The State called a chemist who had examined the substances in the plastic bag that the police seized from Johnson's vehicle. The chemist explained the tests and equipment that she uses to analyze substances. She explained that there are two forms of cocaine: (1) freebase or crack cocaine, and (2) cocaine hydrochloride. She performs three tests on substances that appear to be cocaine. Two of the three tests indicate whether a substance is cocaine, and the third test distinguishes between crack or freebase cocaine and cocaine hydrochloride. However, that test requires a crystallized sample.

[¶ 5] The chemist testified that she examined the seized plastic bag and found that it contained 133 smaller baggies, which she separated by appearance and color into three groups. The first group contained eighty-nine small baggies containing a hard yellow powder and a cumulative weight of 14.9 grams. The second group consisted of thirty-six baggies containing a hard white powder and a cumulative weight of 31.4 grams. The third group contained eight bags of loose white powder, and the substance in those bags weighed 7.4 grams. The chemist per-

formed the three tests on each group, and the substances in all three groups tested positive for cocaine. The first group also tested positive for crack or freebase cocaine, but the chemist was unable to obtain a sufficiently crystallized sample from the other two groups to test for the distinction between crack or freebase cocaine and cocaine hydrochloride. In summary, the chemist concluded that the bag seized from Johnson's vehicle contained 53.7 grams of cocaine, 14.9 of which were determined to be freebase or crack cocaine.

[¶ 6] Midway through the trial, during a chambers conference at which the court and counsel were attending to housekeeping matters, the court raised a question about the wording of the indictment. The court questioned the use of the term "crack cocaine," which appeared in the indictment but does not appear in the statutes. Subsequently, before the State rested, the prosecutor said: "[T]he State would orally move to amend the indictment to properly reflect that crack cocaine is also crack cocaine or cocaine freebase and cocaine." The prosecutor gave as the basis for the motion that the amendment would conform the indictment to the evidence. The court then summarized the State's motion by stating, "Crack cocaine comma, cocaine freebase and/or cocaine."

[¶ 7] The defense objected to the motion, stating that it would have called its own expert and would have cross-examined the chemist differently had the indictment initially read as the State wanted to amend it. The prosecutor argued that because the defense had been furnished with the chemist's report prior to trial it was not surprised by the evidence.

[¶ 8] The court granted the motion. The amended indictment was never reduced to

4. Title 17–A M.R.S.A. § 1103(2)(A) has since been repealed by P.L. 2001, ch. 383, § 116 (effective Jan. 31, 2003). *See, now,* 17–A M.R.S.A. § 1103(1–A)(A) (Supp. 2004).

writing, but we assume, as do the parties in their briefs, that the amended indictment charged Johnson with aggravated trafficking in "crack cocaine, cocaine free-base and/or cocaine."

[¶ 9] Among its jury instructions, which included a definition of possession, both actual and constructive, and a definition of trafficking, the court stated:

> Under Maine law a person is guilty of unlawful trafficking in scheduled drugs if that person intentionally or knowingly traffics in what he knows or believes to be a scheduled drug, which is in fact a scheduled drug.
>
> Now, some of the terms have specific legal definitions which I need to read to you.
>
> . . . .
>
> Scheduled drug means: A drug which State law has made illegal to possess, furnish or traffick. I instruct you that under Maine law cocaine and cocaine base or their derivatives are scheduled drugs.
>
> Cocaine means: A mixture or preparation that contains any quantity of cocaine, its salts, optical and geometric isomers and salts of isomers; or cocaine base, which is the alkaloid form of cocaine.
>
> . . . .
>
> Finally I instruct you that under Maine law if you find beyond a reasonable doubt that the defendant intentionally or knowingly possessed 14 grams or more of cocaine or 4 grams or more of cocaine in the form of cocaine base, you

> may, but are not required to, infer that the defendant trafficked in this drug.

The jury returned a guilty verdict.

## II.  DISCUSSION

[¶ 10] Johnson argues that the court erred in granting the State's motion to amend the indictment. The indictment, as originally worded, charged Johnson with aggravated trafficking in crack cocaine. However, "crack cocaine" is not a term found in the Maine drug statutes. Possession of four grams or more of cocaine base gives rise to a permissible inference that the defendant unlawfully trafficked in scheduled drugs, but the inference does not arise for cocaine unless the defendant possesses fourteen or more grams. 17–A M.R.S.A. § 1103(3)(B) (Supp. 2001).[5] Although cocaine is defined in 17–A M.R.S.A. § 1102(1)(F) (Supp. 2004), the term "cocaine base" is not defined.[6] The statutes also do not define the other terms used by the State's chemist in her testimony: "cocaine freebase" and "cocaine hydrochloride."

[¶ 11] The pertinent rule, M.R.Crim. P. 7(e), provides that a court may authorize the amendment of an indictment, charging other than Class D or E offenses, before a verdict so long as the amendment does not change the substance of the offense. An amendment is not substantive if the amended indictment does not change any fact that the State had to prove to obtain the conviction. *State v. Flick,* 577 A.2d 1192, 1193 (Me.1990).

---

**5.** The introductory paragraph in 17–A M.R.S.A. § 1103(3) has since been amended by P.L. 2001, ch. 383, § 117 (effective Jan. 31, 2003) (codified at 17–A M.R.S.A. § 1103(3) (Supp. 2004)).

**6.** The federal sentencing guidelines recognize that "crack cocaine" and "cocaine base" are the same. 18 U.S.C.S. app. § 2D1.1, note to

drug quantity table (D) (2004); *see also* United States Sentencing Commission, Special Report to the Congress, Cocaine and Federal Sentencing Policy, ch. 2, § C(1)(c) (Feb. 1995) (stating that crack cocaine is a form of cocaine base). Cocaine base is derived from cocaine. *Id.* § (C)(1).

[¶ 12] Here, the necessary facts for conviction were the following: (1) Johnson intentionally or knowingly trafficked; (2) in what he knew or believed to be a schedule W drug; and (3) that was in fact a schedule W drug. 17–A M.R.S.A. § 1103(1). Those facts remain the same under the original and the amended indictments. Cocaine is a schedule W drug. *Id.* § 1102(1)(F). Both the original and the amended indictments allege Class A crimes; both allege trafficking in cocaine. The only difference is the amended indictment also alleges freebase cocaine and cocaine, in addition to crack cocaine. The State successfully proved large enough quantities of both cocaine and crack cocaine to obtain a conviction. A defendant is guilty of trafficking in cocaine if he trafficks in cocaine in whatever form. Because there is no difference in the substance of the crime charged in the original and the amended indictment, it was not error for the court to allow the amendment.

[¶ 13] In *State v. Corliss*, 1998 ME 36, ¶ 7, 706 A.2d 593, 595, we held that an amendment to an indictment that relates solely to surplusage is a matter of form, not substance. There, the indictment alleged that the defendant had three or more prior convictions within a ten-year period, which was an element of the crime. *Id.* ¶ 2, 706 A.2d at 594. The trial court allowed the State to amend the indictment with regard to the specific date of one of the prior convictions. *Id.* ¶ 8, 706 A.2d at 595. We held that the dates of the prior convictions were not required in the indictment, and were, thus, mere surplusage.

*Id.* ¶ 7. The dates of the prior convictions were the evidence by which the State could prove the element of three prior convictions in a ten-year period. *Id.*

[¶ 14] Likewise, in this case the indictment was not required to set forth the evidence that would prove the charge of aggravated trafficking in a scheduled drug. That evidence consisted of the specific drug and the quantities of the drug. Trafficking in cocaine may be proved by the intentional or knowing possession of fourteen grams of cocaine or four grams of cocaine base. 17–A M.R.S.A. § 1103(3)(B). The indictment was sufficient without alleging the possession of a specific amount of the scheduled drug.[7] Thus, the State's inclusion of the words "crack cocaine" added mere surplusage, and the amendment relating to that language was an amendment in form, rather than substance.

[¶ 15] A court may permit an amendment as to form only if it does not result in prejudice to the defendant. *Corliss*, 1998 ME 36, ¶ 8, 706 A.2d at 595. Johnson argues that amending the indictment to allege crack cocaine, cocaine freebase, and cocaine prejudiced him because instead of defending the crack cocaine allegation as he was prepared to do, he had to defend against the more general allegation. However, Johnson does not argue that he was unfairly surprised by the amendment. He had notice, by way of the discovery of the chemist's report, of the fact that some of the cocaine was cocaine freebase and the rest was simply cocaine.

---

7. In Maine, the statutory maximum sentence is not increased because of the quantity of the drug, and thus, there is no requirement for the State to allege quantity. *See United States v. Cotton*, 535 U.S. 625, 632–33, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002) (holding that failure of the indictment to allege the drug quantity, which was the basis of the sentence enhancement under the federal sentencing guidelines, violated the rule in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), but the error was harmless).

[¶ 16] In summary, under the circumstances of this case, the court did not err in allowing the amendment because it did not change the substance of the charge. The indictment, both before and after the amendment, contained the elements the State was required to prove. Moreover, Johnson was not prejudiced by the amendment because he had notice of the facts alleged in the amendment.

[¶ 17] Johnson further claims that the term "crack" should not have been used in the indictment initially or as amended because of the negative connotation the word carries. He contends that crack is associated with African–Americans, and that it is an especially prejudicial term when the defendant is African–American. Because crack is not a statutory term, he argues, it is surplusage, the only purpose for which was to appeal to the jury's prejudices.

[¶ 18] This argument, however, is one that Johnson did not make to the trial court either in regard to the original or the amended indictment. He could have requested that the term "crack" be dropped from the indictment, but he did not. *See* M.R.Crim. P. 7(d). Although he objected at trial to the motion to amend the indictment, he did not object on the ground that the term "crack" was prejudicial. Reviewing this unpreserved issue for obvious error, we cannot find that the use of the term so affected Johnson's substantial rights that he was deprived of a fair trial. *See State v. Barnes,* 2004 ME 105, ¶ 5, 854 A.2d 208, 209–10.

The entry is:

Judgment affirmed.