2006 ME 21

**STATE of Maine**

v.

**Jeremy ALLEN.**

Supreme Judicial Court of Maine.

Argued: Nov. 14, 2005.
Decided: March 2, 2006.

———

G. Steven Rowe, Attorney General, Donald W. Macomber, Asst. Atty. Gen. (orally), Lisa P. Marchese, Asst. Atty. Gen., Augusta, for State.

Wendy Moulton Starkey, Esq. (orally), Erwin, Ott, Clark, Orso & Campbell, York, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.

CALKINS, J.

[¶ 1] Jeremy Allen appeals from a judgment of conviction of assault (Class C), 17–A M.R.S.A. § 207(1)(B) (Supp.2003), entered after a jury trial in the Superior Court (Androscoggin County, *Gorman, J.*). Allen argues that (1) the evidence was insufficient to convict him; (2) the court erred when it admitted statements that Allen's wife made to an emergency medical technician; (3) the prosecutor's conduct and statements during closing argument amounted to prosecutorial misconduct; and (4) the court erred when it allowed into evidence a full-body photograph of the victim. We affirm the conviction, and the only issue that merits discussion concerns the admissibility of the photograph of the victim.

## I. BACKGROUND

[¶ 2] The victim, Allen's son, was twenty-one months old at the time of the assault on February 13, 2003. The child died two days later, as the result of a separate incident that occurred on February 14. The child's mother, Allen's wife, was convicted of manslaughter for causing the child's death.[1]

[¶ 3] The evidence at Allen's trial demonstrated that on the evening of February 13, the child became angry and defiant when Allen and his wife told the child to pick up toys. Allen attempted to redirect the child's behavior, but the behavior became a temper tantrum. Allen spanked the child with a wooden spoon, first on the diaper and then on the child's bare bottom. Allen testified that he did this no more than three times. The child finally calmed down when Allen's wife splashed water on his face. The next day, while Allen was in New Hampshire on business, he telephoned his wife, who told him that there was visible bruising on the child's bottom.

[¶ 4] Paramedics were called to the Allen residence around 10:00 P.M. on February 14. The child was unconscious, unresponsive, and breathing with great labor. The paramedics transported him to a hospital, and after he was stabilized, he was taken to Maine Medical Center, where he was diagnosed with severe head trauma and underwent extensive neurosurgery. After surgery, a pediatrician who specializes in child abuse examined the child and at Allen's trial, the pediatrician testified about the bruises. Three photographs were admitted into evidence, which depict bruising on the child's buttocks. Two of the photographs show only a portion of the child's body, but one shows the child's entire body, including the head bandage that was placed on the child after surgery. All three photographs show tubing and other medical apparatus attached to the child.

---

1. We affirmed the manslaughter conviction of Sarah Allen in *State v. Allen,* 2006 ME 20, 892 A.2d 447.

[¶ 5] Allen was indicted for the offense of assault and pleaded not guilty. Through motions in limine, he asked the court for rulings on various evidentiary matters. He sought to exclude a videotape and all photographs taken by the State or medical personnel, depicting bruises on the child. He contended that the videotape and photographs were not relevant and, if relevant, their probative value was outweighed by the danger of unfair prejudice and the danger of misleading the jury. At the motion hearing, Allen argued that the danger of unfair prejudice came in part from the depiction in the photographs of the medical apparatus on the child's body, which, he contended, would inflame the jury's emotions. The court promptly issued an order denying the motions with regard to the photographs and videotape, stating that "their probative value greatly outweighs any possible prejudice." The court added:

> The issue for the jury to decide is whether [Allen's] actions amounted to an exercise of parental discipline or a criminal event. In order to make that decision, the jurors will need to consider, among other factors, the effect of the spanking on [the child]. The photographs and videotape contain direct evidence of those effects.

[¶ 6] Approximately one week after the decision on the motions in limine, jury selection was held, but the court was unable to impanel a jury, and the case was continued. Four months later, the court and parties conferred on several pretrial issues and set jury selection for the following Monday. Immediately prior to jury selection, a further conference of counsel took place. The court stated:

> [O]ver the weekend I reviewed the videotape again, which the [S]tate had intended to offer to show [the child's] size, and I understand this morning that the parties have reached an agreement that the videotape will stay out, but that a photograph of [the child's] entire body at the hospital before death will go in in lieu of that videotape.

Both the prosecutor and counsel for Allen confirmed that they had reached an agreement. During the testimony of the pediatrician, the full-body photograph was admitted without objection, and the State did not offer the videotape into evidence.

[¶ 7] The jury convicted Allen of assault, and he was sentenced to eighteen months incarceration with all but six months suspended and a probationary period of two years.

## II. DISCUSSION

[¶ 8] Allen contends that the court should not have admitted the photograph that showed the child's full body.[2] Allen argues that the photograph was not relevant, M.R. Evid. 401, 402, and its prejudicial effect outweighed any probative value, M.R. Evid. 403.

[¶ 9] Although the applicable standard of review is generally dependant upon whether the alleged error is preserved, we do not need to determine whether Allen preserved his objection to the photograph. We assume that Allen's motion in limine served to preserve the objection, and we apply the abuse of discretion standard of review, which is more beneficial to Allen than the obvious error standard.[3] Even with the more beneficial

---

2. Allen does not raise any issue on appeal concerning the other two photographs that were admitted.

3. When a photograph is admitted over a Rule 403 objection, we review the admission of the evidence for abuse of discretion. *See State v. Kalex*, 2002 ME 26, ¶ 10, 789 A.2d 1286,

standard of review, Allen cannot prevail in this appeal because the trial court acted well within its discretion by ruling on the motion in limine to admit the photograph.

[¶ 10] In *State v. Crocker*, 435 A.2d 58 (Me.1981), we articulated the three determinations that a court should make when it rules on the admissibility of photographs. There we affirmed Crocker's conviction for murder of his five-year-old stepson. Medical personnel testified to the bruises and burns on the child's body and to the cause of death from malnutrition and a head injury. *Crocker*, 435 A.2d at 73. The trial court admitted photographs that showed the child's condition, over the defendant's objection that they were unfairly inflammatory. We said that photographs are admissible if they are (1) accurate depictions; (2) relevant; and (3) if their probative value is not outweighed by any tendency toward unfair prejudice. *Id.* at 75. There was unchallenged testimony in *Crocker* that the photographs accurately portrayed what they purported to portray. They were relevant because they tended to show that Crocker had engaged in an ongoing course of conduct toward the child

and refuted any defense that Crocker's conduct was accidental. They also illustrated the medical testimony and helped the jury assess the defendant's culpability. *Id.* Furthermore, the photographs were not merely cumulative of the medical testimony because they "conveyed relevant information to the jury in a much more complete and meaningful form than could the almost clinical words of the doctors and nurses." *Id.* at 76. Although the photographs could be considered "gruesome," that fact did not make them inadmissible, because the salient issue was whether their probative value was "*substantially* outweighed by the danger of *unfair* prejudice." *Id.* (citations omitted). We said that the trial court did not abuse its discretion in admitting the photographs.

[¶ 11] In this case, the accuracy determination outlined in *Crocker*, is met in that there is no suggestion that the full-body photograph did not depict the child accurately. Indeed, the inference from Allen's argument is that the photograph depicts the child too accurately by showing every-

---

1289. Generally, an objection to the admission of evidence based on M.R. Evid. 403 must be made at trial in order to preserve the error. *See State v. Thomes*, 1997 ME 146, ¶ 7, 697 A.2d 1262, 1264. However, we have held that a motion in limine may preserve a Rule 403 objection to the admission of evidence when the court's ruling on the motion is "unequivocally" final. *State v. Thongsavanh*, 2004 ME 126, ¶ 8 n. 8, 861 A.2d 39, 42.

When an evidentiary error is unpreserved, we apply the obvious error standard. *See State v. Lobozzo*, 1998 ME 228, ¶ 8, 719 A.2d 108, 110; M.R.Crim. P. 52(b). The obvious error standard requires either a determination or an assumption that an error was made, and then a determination as to whether the error was obvious and affected substantial rights. *See, e.g., State v. Dube*, 522 A.2d 904, 907 (Me.1987).

The State suggests that the alleged error in this case is unreviewable because prior to jury

selection, Allen agreed to admit the photograph. *See U.S. v. Olano*, 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (stating that waiver of rights under a legal rule, as distinguished from forfeiture, extinguishes an error); *see also State v. Cleaves*, 2005 ME 67, ¶¶ 10–15, 874 A.2d 872, 873–74 (stating that a party's approval of the court's proposed jury instructions precludes that party from subsequently arguing on appeal that the court's failure to include certain instructions amounted to obvious error); *State v. Rega*, 2005 ME 5, ¶¶ 16–17, 863 A.2d 917, 922 (holding that where the defendant affirmatively requested that the evidence be presented to the jury, we would not review any error resulting from defendant's trial strategy). The procedures required for a court to conclude that a waiver was made depend on the right at stake, *see Olano*, 507 U.S. at 733, 113 S.Ct. 1770, and we have not previously opined on those procedures in circumstances similar to this case.

thing, including the head bandage and medical apparatus.

[¶ 12] All three photographs were relevant both on the issue of the assault and Allen's defense, which was that the spanking was justified as parental discipline. *See* 17–A M.R.S. § 106(1) (2005).[4] A fact that is of consequence in a parental discipline defense is whether the force used by the parent results in temporary marks and transient pain. *State v. York*, 2001 ME 30, ¶ 14, 766 A.2d 570, 574. The size and color of the bruises on the child were pertinent to this issue, and the photographs show that it was more probable than not that the marks were not temporary. Furthermore, they were relevant in weighing Allen's credibility with respect to his testimony that he spanked the child only three times and was not trying to hurt him. The full-body photograph also showed the proportionate sizes of the bruises to the whole child, and it demonstrated his size overall. His size was relevant to the reasonableness of the force that Allen used to strike him. The wooden spoon that Allen used to spank the child was admitted into evidence, and the combination of the spoon and the size of the bruises in the full-body photograph allowed the jury to further assess Allen's story.

[¶ 13] The third determination in the analysis set forth in *Crocker* for the admissibility of photographs is a Rule 403 inquiry: whether the "probative value is substantially outweighed by the danger of unfair prejudice." M.R. Evid. 403. To sustain a Rule 403 objection, the prejudice "must be more than simply damage to the opponent's cause." *State v. Ardolino*, 1997 ME 141, ¶ 10, 697 A.2d 73, 78 (cita-

tions omitted). It must be evidence that has "an undue tendency to move the tribunal to decide on an improper basis, commonly, though not always, an emotional one." *Id.*

[¶ 14] In performing the balancing that Rule 403 requires, the trial court found that the probative value was significant on the issue of the physical effects of the spanking. The court also made a finding that none of the photographs were gruesome, which finding is not clearly erroneous. The court concluded that any possible prejudice was outweighed by the probative value.

[¶ 15] Allen argues that the full-body photograph shows that the child's condition was grave and allowed the jury's passions to be inflamed. However, the fact that the child was taken to the hospital on February 14, where he was treated for his life-threatening injuries, was presented to the jury beginning with the first witness. In fact, prospective jurors were informed that the child had died and that the mother was charged with causing the child's death. The pediatrician testified about the child's massive head injury, and the deputy chief medical examiner testified about the autopsy he performed on the child. Thus, the jury was well aware of the head injury and serious condition of the child when he was in the hospital. Because these facts were already before the jury, the depiction in the full-body photograph of the head bandage and medical apparatus would not have unduly caused the jury to decide the case on an emotional or other improper basis.

[¶ 16] Although photographs add a dimension not present in a verbal, clinical

---

4. Title 17–A M.R.S. § 106(1) (2005) provides in pertinent part: "A parent ... responsible for the long term general care and welfare of a person is justified in using a reasonable degree of force against such person when and to the extent that he reasonably believes it necessary to prevent or punish such person's misconduct."

description of injuries, which is often precisely why they have probative value, there was nothing in the full-body picture, including the bandage and medical apparatus, that was particularly shocking. If there was any risk that the contested photograph would cause a jury to decide the case on an emotional or other improper basis, that risk was minimal at best and did not *substantially* outweigh its probative value.

[¶ 17] Any case with allegations of child abuse evokes emotions, but we allow photographs of abused children because we recognize that their probative value can, in any given case, outweigh the danger of unfair prejudice. *See, e.g., State v. Conlogue,* 474 A.2d 167, 171 (Me.1984) (affirming the admissibility of photographs showing bruises covering the child's torso); *State v. Conwell,* 392 A.2d 542, 544 (Me. 1978) (affirming the admission photographs of the child with bruises, describing them as "unpleasant to view").[5] If we were to rule in this case that the court abused its discretion in allowing the full-body photograph, few graphic photographs would survive a Rule 403 objection.

[¶ 18] The court did not abuse its discretion in ruling in the motion in limine that the photographs were admissible and in admitting the full-body photograph into evidence.

The entry is:

Judgment affirmed.

---

5. There are numerous criminal cases in which we have held that a court did not abuse its discretion in admitting photographs depicting the victim's injuries. Field & Murray, *Maine Evidence* § 403.5 at 113 n. 145 (2000 ed. 1999). Even gruesome autopsy photographs are admissible. *See State v. Lockhart,* 2003 ME 108, ¶ 46, 830 A.2d 433, 448. We are aware of only one case in which the admission was error, albeit harmless, and that photograph, which was found to be gruesome, showed the bloody, deceased victim with his face "contorted by the agonies of a violent death." *State v. Conner,* 434 A.2d 509, 511–14 (Me.1981).