2007 ME 26

**STATE of Maine**

v.

**Payson W. SNOW Jr.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Dec. 20, 2006.
Decided: Feb. 6, 2007.

Evert N. Fowle, District Attorney, Darrick X. Banda, Asst. Dist. Atty., Augusta, for State.

Angus Ferguson, Portland, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

DANA, J.

[¶ 1] Payson W. Snow Jr. appeals from a judgment of conviction for assault (Class D), 17–A M.R.S. § 207(1)(A) (2006) and criminal threatening (Class D), 17–A M.R.S. § 209 (2006), following a bench trial in the District Court (Augusta, *Vafiades, J.*), contending that the court erred in excluding, as hearsay, testimony intended to impeach his accuser. We disagree and affirm the judgment.

## I. BACKGROUND

[¶ 2] Diane Marie Tash and Payson W. Snow Jr. were involved in a long-term intimate relationship and lived together in a trailer in Pittston. In recent years, Snow had been suffering from a mental illness. Their relationship had a tumultuous ending, with allegations of three separate acts of domestic violence. In the first incident, Snow allegedly twice punched Tash in the arm leaving a bruise. In the second incident, he allegedly slapped Tash in the head three times for failing to make

breakfast. In the final incident, Snow allegedly hit Tash and chased her from their trailer, while accusing her of "runnin' around," and claiming he was "gonna kill [her] and ... hurt [her]."

[¶ 3] Tash did not report the first two incidents. Following the last incident, she spoke with Snow's sister, Joyce Ann Harrington, asking her to call the authorities. Trooper Greg Stevens of the Maine State Police responded to the call, interviewed both parties and took a photograph of a bruise on Tash's left arm. Snow told Trooper Stevens that Tash had told him that she bruised her arm stumbling over a dog crate into a bureau. Snow was arrested and charged with assault and criminal threatening.

[¶ 4] A bench trial was held during which Tash testified that there was no alternate explanation for the bruise photographed by Trooper Stevens. Trooper Stevens testified without objection to Snow's claim that Tash fell into the bureau and Tash's claim of an assault. Later in the trial, the court sustained the State's hearsay objection to the testimony of Joyce Ann and Keerstin Harrington, about statements made to them by Tash apparently consistent with Snow's alternate explanation for the bruise.[1] Snow, however, failed to make an offer of proof concerning the Harringtons' testimony. The court found Snow guilty of both charges and this appeal followed.

## II. DISCUSSION

### A. Whether Snow Preserved the Issue for Appeal

[¶ 5] The parties dispute whether Snow properly preserved his challenge to the exclusion of the Harringtons' testimony. In order to preserve an issue for appeal, "M.R. Evid. 103(a)(2) requires the

---

1. For example, the transcript of Keerstin Harrington's testimony provides:

> Q. Did you discuss that bruise with Diane Tash?
> A. Yes, I did.
> Q. Can you tell me what that discussion was about?
> MR. BANDA: Objection.
> COURT: Sustained.
> Q. Did Diane tell you how that bruise was caused?
> A. Yes, she -
> MR. BANDA: Obje—
> WITNESS:—did.
> Q. Can you—can you tell us what you were told?
> MR. BANDA: Objection.
> COURT: Sustained.
> ...
> Q. Are you—are you aware that Diane Tash had a bruise on her arm?
> A. Yes, I am.
> Q. And how—how did you understand that bruise occurred?
> A. Well, my uncle and I both own dogs, and they're brother and sister. And he has the brother—or had the brother. And it was kept in Ms. Tash's bedroom.

> MR. BANDA: I'm gonna object because I don't think she was there. She is gonna go on and re—recount—
> COURT: Yeah, but so far she's okay.
> MR. BANDA: But she's—but she's des—she is describing an event—
> COURT: That's right.
> MR. BANDA:—that she didn't see.
> COURT: I know, but she hasn't got there yet.
> MR. BANDA: Okay.
> COURT: Go ahead. So you own dogs together. Go ahead, ma'am.
> WITNESS: And I guess there was a kennel that was kept—
> MR. BANDA: Objection.
> COURT: Sustained.
> ---
> For example, the transcript of Joyce Ann Harrington's testimony provides:
> Q. Did you ever see the bruise on Diane Tash's arm?
> A. Ah, the day that we—that we went over to her—his house—her house—ah, I think they were up the day before, and seems like she showed it to us. And she told me that she had fallen with the dog—
> MR. BANDA: Objection.
> COURT: Sustained.

proponent of [the] evidence to make its substance known to the court by an offer of proof, unless the substance was apparent from the context of the question." *State v. Howe*, 2001 ME 181, ¶ 9, 788 A.2d 161, 163. "An offer of proof should contain not only the facts that are sought to be elicited, but also reference to the facts, circumstances, or legal grounds on which the testimony is admissible." Field & Murray, *Maine Evidence* § 103.4 at 15 (2000 ed. 1999). Similarly, when a party eschews an explicit offer of proof and relies on the context of a question to preserve the issue for appeal, both the substance and the legal grounds on which the testimony is admissible must be apparent from that context.

[¶ 6] The State argues that the issue was not preserved and that the court did not commit obvious error pursuant to M.R.Crim. P. 52(b).[2] *See State v. Allen*, 2006 ME 21, ¶ 9 n. 3, 892 A.2d 456, 459. The State contends that Snow failed to make an offer of proof regarding the substance of Keerstin's testimony, and failed to provide the grounds on which Keerstin's or Joyce's testimony was admissible.

[¶ 7] Although he admits he failed to make an explicit offer of proof, Snow argues that the substance of the Harringtons' testimony was apparent not only from the context of his examination, but from the bits of their testimony that was provided prior to the State's objections. Snow argues that his theory of admissibility was also apparent.

[¶ 8] We agree that the substance of the Harringtons' testimony was apparent from both the context of their examinations and the bits of testimony elicited. It was clear that the Harringtons sought to testify to statements Tash made to them concerning an alternate explanation for the bruise. What was not made clear from the context, however, was the grounds on which the testimony was admissible. In response to the State's objections, the court properly excluded the Harringtons' testimony regarding out-of-court statements made by Tash as hearsay under M.R. Evid. 801(c) and 802.[3] The court acted reasonably in doing so, given that the testimony in question was certainly relevant to the truth of the matter asserted: whether Snow punched and thereby assaulted Tash leaving a mark on her arm.

[¶ 9] Snow chose not to respond to this objection and subsequent exclusion of the evidence. He did not indicate on what basis the Harringtons' testimony was admissible. Nor was it clear from the context of the examination that Snow intended to use the Harringtons' testimony solely to impeach Tash and not for the truth of the matter asserted. During the course of his examination of the Harringtons, Snow neither alluded to Tash's credibility, nor tipped his hand by speaking of her conflicting explanations.

[¶ 10] Accordingly, we find that although the substance of the Harringtons' testimony was apparent from the context of their examination, the legal theory on which the testimony was admissible was not. Therefore, because Snow failed to make an explicit offer of proof regarding the admissibility of the testimony, he failed to preserve the issue for appeal under M.R. Evid. 103(a)(2).

---

2. M.R.Crim. P. 52(b) provides that "[o]bvious errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

3. M.R. Evid 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

M.R. Evid. 802 provides, in pertinent part, that "[h]earsay is not admissible except as provided by law or by these rules."

B. Whether the Trial Court Committed Obvious Error in Excluding the Harringtons' Testimony

 [¶ 11] When an evidentiary error is unpreserved, we review the trial court's decision to exclude evidence under an obvious error standard. *Allen*, 2006 ME 21, ¶ 9 n. 3, 892 A.2d at 459. "The obvious error standard requires either a determination or an assumption that an error was made, and then a determination as to whether the error was obvious and affected substantial rights." *Id.* An unpreserved error is obvious when it deprives a party of a fair trial or results in such a serious injustice that the Court cannot, in good conscience, allow the judgment to stand. *State v. White*, 2002 ME 122, ¶ 8, 804 A.2d 1146, 1149.

[¶ 12] Testimony concerning prior inconsistent statements intended to impeach the credibility of a witness and not presented to prove the truth of the matter asserted is not considered hearsay. *See State v. Allen*, 462 A.2d 49, 51–52 (Me. 1983). Accordingly, evidence of prior inconsistent statements, although properly excluded as hearsay, may nonetheless be admissible to impeach the credibility of a witness. *Id.* Any party, including the party calling the witness, may attack a witness's credibility. M.R. Evid. 607.

[¶ 13] The trial court did not commit an error, much less an obvious error. In the absence of a disclaimer of an offer of the Harringtons' testimony for its truth or an explicit offer exclusively for impeachment purposes, the trial court acted appropriately in considering the testimony relevant to the truth of the matter asserted and finding it to be inadmissible hearsay evidence pursuant to M.R. Evid. 802. In situations such as this, where inadmissible evidence may be admissible on alternate grounds, it is the responsibility of the proponent, not the court, to identify the alternate basis for admissibility.

The entry is:

Judgment affirmed.