2007 ME 156

**STATE of Maine**

v.

**Gary R. GAUTHIER.**

and

**State of Maine**

v.

**Thomas J. Dyer.**

Supreme Judicial Court of Maine.

Argued: Nov. 7, 2007.
Decided: Dec. 27, 2007.

G. Steven Rowe, Atty. Gen., Donald W. Macomber, Asst. Atty. Gen. (orally), Augusta, for State.

George A. Hess (orally), Hess Law Firm, Lewiston, Robert Smith (orally), Westbrook, for defendants.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, SILVER, and MEAD, JJ.*

ALEXANDER, J.

[¶ 1] Gary R. Gauthier and Thomas J. Dyer appeal from judgments entered in the Superior Court (Androscoggin County, *Delahanty, J.*) upon a jury verdict, finding each guilty of one count of murder, 17-A M.R.S. § 201(1)(A), (B) (2006). Gauthier and Dyer assert that (1) the court erred in instructing the jury that it could find each guilty if it found that he killed James Graffam "and/or" John Vining; and (2) the court's instructions to the jury on accomplice liability were erroneous. Gauthier separately challenges his sentence, arguing that the Superior Court (1) violated his constitutional rights to due process and trial by jury in sentencing him to a term of sixty years incarceration; (2) misapplied principles of law in setting his basic sentence; (3) abused its discretion in setting his maximum sentence; and (4) abused its discretion in sentencing him to a term of years which is excessive. We affirm the convictions and Gauthier's sentence.

## I. CASE HISTORY

[¶ 2] On October 29, 2005, the bodies of James Graffam and John Vining were discovered in the area of Foss Road in Lewiston. The medical examiner determined the cause of death for both was blunt trauma to the head, consistent with a base-

* Although not available at oral argument, Justice Clifford participated in this opinion. *See* M.R.App. P. 12(a) (stating that a "qualified justice may participate in a decision even though not present at oral argument").

ball bat, and that both had been dead for a few weeks to a month, consistent with a date of death of September 23, 2005.

[¶ 3] On December 8, 2005, the State Police received a call from a caretaker in Pownal indicating that he found a bleach bottle, beer cans, a baseball bat, and a bag of brown/red stained clothing on a property in Pownal. The Crime Lab determined the items were stained with Vining's and Graffam's blood.

[¶ 4] On December 15, 2005, and January 11, 2006, police spoke with Gauthier and Dyer separately. Each admitted knowing Graffam and going to his apartment, but denied knowing Vining. On January 11, Dyer admitted that he was present during the homicides, but claimed he only participated out of fear that Gauthier would kill him.

[¶ 5] Gauthier and Dyer were indicted on February 7, 2006. The indictments stated that each defendant "did intentionally or knowingly cause the death of John G. Graffam (dob: 7/28/1975) and James Everett Vining (dob: 4/10/1962) or did engage in conduct which manifested a depraved indifference to the value of human life and which, in fact, caused the death of John G. Graffam and James Everett Vining."

[¶ 6] A six-day trial was held in October 2006, during which forensic specialists testified that the evidence linked Gauthier and Dyer's DNA to the clothing found in Pownal. Dyer testified that he was present during the killings, but claimed that it was Gauthier who wielded the bat, and that Dyer's participation was solely out of fear that Gauthier would kill him. He alleged Gauthier continued to threaten him throughout the night, while they buried the bodies, and the following day, when they buried the clothing later found in Pownal. Gauthier, who did not testify, presented evidence that Dyer asked three people to lie to police.

[¶ 7] Both Gauthier and Dyer requested a jury instruction on accomplice liability, including an instruction that mere presence at the scene of the crime, alone, is insufficient to find someone guilty as an accomplice.

[¶ 8] Gauthier and Dyer contended that the jury should be instructed that for them to be found guilty, the jury had to find each guilty for the death of both victims in order to convict, due to the use of the conjunctive "and" in the indictment. The court decided, over the objections of Gauthier and Dyer, to instruct the jury that to convict it only had to find each defendant guilty of causing the death of either victim. The court provided a special jury instruction and verdict form that informed the jury that it had to consider each defendant's guilt as to each victim separately and decide unanimously as to each victim.

[¶ 9] The court instructed the jury that:

> the state must prove beyond a reasonable doubt that John Graffam and James Vining are dead, number two, that the defendant caused the death of John Graffam and/or James Vining, and that the defendant caused the death of John Graffam and/or James Vining intentionally or knowingly.

The court informed the jury that its verdict as to guilt for each defendant regarding each victim had to be unanimous, but that the basis of guilt, whether principal or accomplice liability, did not have to be unanimous. The court gave similar "and/or" instructions regarding manslaughter.

[¶ 10] The court then informed the jury that, to be guilty as an accomplice, a person must "with the intent of promoting or carrying out the commission of the crime,

... solicit such other person to commit the crime or aid or agree to aid or attempt to aid the other person in planning or committing the crime." The court went on to state, without any objection at the time, that:

> mere presence at the scene of the crime without anything more does not prove that a person is an accomplice to a crime; however, when a defendant's presence has been proven beyond a reasonable doubt, the State need only prove any conduct that intentionally promotes or facilitates the crime, however slight.

The court did restate the State's burden and that it had to prove every element of the crime beyond a reasonable doubt.

[¶ 11] Based on unanimous findings by the jury, both Gauthier and Dyer were found guilty of one count of murder for the killing of both Graffam and Vining.

[¶ 12] Sentencing was held at a later date. After hearing from members of the victims' families, members of Gauthier's and Dyer's families, both Gauthier and Dyer, and both defense attorneys, the court recessed in order to properly review all of the evidence related to sentencing. The court then addressed the courtroom and discussed the steps outlined in *State v. Hewey*, 622 A.2d 1151, 1154–55 (Me.1993), for imposing sentences, and the requirement that the court compare the manner of death in this case to that of other cases in setting the basic sentence. For comparable cases, the sentencing court referenced Gauthier's "Memorandum in Aid in Sentencing" to the court, indicated that the pre-sentence report provided similar comparisons, and discussed murder cases in which the justice had presided and imposed sentences. The court set a basic sentence of fifty years for both Gauthier and Dyer, based on the number of victims and manner of death. The court reduced Dyer's sentence to forty-seven years based

on several mitigating factors. The court increased Gauthier's sentence to sixty years because it found there was only one mitigating factor and many aggravating factors including his lack of respect for others, his high risk of recidivism category under the Level of Service Inventory–Revised (LSI–R), his prior bad acts, his prior criminal record, his refusal to accept responsibility, his continuing blame of others, and his lack of empathy. Gauthier and Dyer were each also ordered to pay $8226.25 in restitution.

[¶ 13] Gauthier and Dyer timely appealed.

## II. DISCUSSION

### A. Instructions to the Jury

[¶ 14] We review jury instructions as a whole for prejudicial error, to ensure they informed the jury correctly and fairly. *State v. Martin*, 2007 ME 23, ¶ 5, 916 A.2d 961, 964. In this review, we consider the effect of the instruction as a whole and the potential for juror misunderstanding. *Id.* Errors in criminal cases that affect constitutional rights are reviewed to determine that we are satisfied, beyond a reasonable doubt, that the error did not affect substantial rights or contribute to the verdict. *State v. Durant*, 2004 ME 136, ¶ 14, 861 A.2d 637, 640 (citing *State v. Burdick*, 2001 ME 143, ¶ 29, 782 A.2d 319, 328; *State v. Warren*, 1998 ME 136, ¶ 17, 711 A.2d 851, 857).

[¶ 15] In order to demonstrate that failure to give the requested instruction was erroneous, Gauthier and Dyer had to show the instruction they requested (1) states the law correctly; (2) is generated by the evidence in the case; (3) is not misleading or confusing; and (4) is not otherwise sufficiently covered in the court's instructions. *Martin*, 2007 ME 23, ¶ 6, 916 A.2d at 964.

### 1. Use of the Term "and/or"

[¶ 16] Gauthier and Dyer argue that the court should have instructed the jury that in order to find either guilty, the jury had to find that defendant responsible for the death of both victims, rather than instructing the jury that they could convict if they found the defendant guilty for Graffam's "and/or" Vining's death. Gauthier and Dyer assert this change from the indictment amounted to a substantive amendment to the indictment and made the indictment duplicitous. Further, they contend that even if this was not a substantive amendment, but only one of form, it was prejudicial because it interfered with their right to receive notice of the charges against them, receive a fair trial, and prepare a defense.

[¶ 17] The purpose of an indictment is to put the accused on notice of the charge and allow the accused to prepare a defense. *State v. Pierce*, 438 A.2d 247, 250 (Me.1981). The indictment must "allege every material fact that forms the essential elements of the charged crime." *State v. Coleman*, 452 A.2d 397, 399 (Me. 1982). The test for determining whether an indictment is sufficient is whether "an accused of reasonable and normal intelligence would, by the language of the indictment, be adequately informed of the crime charged and the nature thereof, so that [the accused] could properly prepare his defense ... and be protected against a subsequent prosecution for the same cause." *Pierce*, 438 A.2d at 250 (citing *State v. Charette*, 159 Me. 124, 126–27, 188 A.2d 898, 900 (1963)).

[¶ 18] Though an indictment may be amended, if such an amendment creates a substantive change, the indictment must be resubmitted to the grand jury. *State v. Corliss*, 1998 ME 36, ¶¶ 5–8, 706 A.2d 593, 594–95. A change is substantive if it changes the nature or grade of the charged offense; it is formal if it does not alter the facts that must be proved. *Id.* ¶ 5, 706 A.2d at 594. Changes in form will not be permitted if they prejudice the defendant. *State v. Johnson*, 2005 ME 46, ¶ 15, 870 A.2d 561, 565 (citing *Corliss*, 1998 ME 36, ¶ 8, 706 A.2d at 595). No prejudice exists when the defendant is not unfairly surprised by the amendment or facts, and when the defendant's ability to prepare a defense is not prejudiced. *Corliss*, 1998 ME 36, ¶ 8, 706 A.2d at 595.

[¶ 19] The indictment charged each defendant with one count of murder for the death of Graffam *and* Vining pursuant to 17–A M.R.S. § 201(A) or (B). "A person is guilty of murder if the person: (A) Intentionally or knowingly causes the death of another human being; [or] (B) Engages in conduct that manifests a depraved indifference to the value of human life and that in fact causes the death of another human being." 17–A M.R.S. § 201 (2006).

[¶ 20] The trial court's decision to instruct the jury that it only had to find each defendant guilty of the murder of Graffam or Vining did not constitute a substantive change. Under the indictment, the State had to prove, beyond a reasonable doubt, that each defendant "intentionally or knowingly cause[d] the death of another human being" or that he "engage[d] in conduct that manifest[ed] a depraved indifference to the value of human life" and that conduct caused the "death of another human being." 17–A M.R.S. § 201. The trial court's instruction in no way altered the State's burden; it did not reduce the elements or alter the facts that had to be proved. Thus, the jury instructions did not constitute a substantive amendment to the indictment.

[¶ 21] Additionally, the variation from the indictment was not prejudicial because

Gauthier and Dyer were on notice of the crime charged and were convicted of that crime: one count of murder. There was no unfair surprise or prejudice. A reasonable person of normal intelligence would have been placed on notice that if the jury found the person guilty of the murder of another human being, even if it was only one other human being, that person was guilty of murder. Gauthier's and Dyer's ability to defend against one count of murder was not affected by this alteration because if either was found guilty of the murder of either victim, he committed murder, and was accountable under 17–A M.R.S. § 201. Had the trial court instructed otherwise, it would have misled the jury and not properly informed them of the law, contrary to the requirements of jury instructions. *See Martin,* 2007 ME 23, ¶ 6, 916 A.2d at 964 (discussing the purpose of jury instructions).

 [¶ 22] Gauthier and Dyer also assert that this amendment made the indictment duplicitous. Even if this were the case, which it is not, it would be harmless here. An indictment is duplicitous if it combines two or more distinct and separate offenses in one count. *U.S. v. Hood,* 210 F.3d 660, 662 (6th Cir.2000). The concern with such indictments is that juries may not reach a unanimous verdict and that defendants cannot be convicted of one offense and acquitted of the other. *Id.* at 662–63. Such an error is one of form, not substance, and may be resolved by instructions to the jury of the need for unanimity as to each item upon which conviction is based. *State v. Doyon,* 221 A.2d 827, 830 (Me.1966).

[¶ 23] The burden is on the defendants to show that they were prejudiced by this instruction, that but for this alteration, the decision would have been different. *U.S. v. Taylor,* 193 Fed.App'x 793, 794 (10th Cir.2006). Here, the trial court ensured

that the jury reached a unanimous verdict as to each defendant's guilt concerning each victim, thus resolving any concerns regarding unanimity. The jury found Gauthier and Dyer each guilty of both murders. Therefore, there is no concern that they may have been acquitted of one murder but not the other. Furthermore, they were only convicted of one count of murder and only sentenced based on that one count. Thus, no prejudice resulted.

 [¶ 24] Gauthier and Dyer also argue that the special verdict form exacerbated these problems by reiterating the "and/or" language. Though special verdict forms are generally disfavored in criminal cases, there is no rule against them. *See State v. McNally,* 2007 ME 66, ¶¶ 9–10, 922 A.2d 479, 481–82; *State v. Fournier,* 554 A.2d 1184, 1188 (Me.1989). In fact, there are instances, such as this one, in which special verdict forms are beneficial to the defendant because they decrease juror confusion and compel individual consideration of the charges against each defendant separately. *See United States v. Edelkind,* 467 F.3d 791, 794 (1st Cir.2006); *State v. Waldron,* 642 A.2d 148, 149–50 (Me.1994). Here, the form ensured that the jury considered the guilt of each defendant regarding each victim separately, and that the verdicts were unanimous. Thus, there was no error by the trial court. The instructions given properly informed the jury of the law, while the instructions requested by Gauthier and Dyer did not.

2. Accomplice Liability

 [¶ 25] Gauthier and Dyer challenge the court's instruction to the jury on accomplice liability. They argue that the jury may have been misled by the placement of the term "beyond a reasonable doubt" after the clause regarding presence, and by the placement of the term "however slight" after the additional activi-

ty requirement. Thus, they contend the jury may have believed a lesser standard than proof beyond a reasonable doubt was required to convict based on accomplice liability.

[¶ 26] Gauthier and Dyer failed to raise this issue at trial; thus it was not properly preserved. We review issues not properly preserved at trial for obvious error. M.R.Crim. P. 52(b); *State v. Snow*, 2007 ME 26, ¶ 11, 916 A.2d 957, 961. When such an error is based on jury instructions, we "will not grant relief unless the error in the instructions is so highly prejudicial and so taints the proceedings as to virtually deprive the defendant of a fair trial." *State v. Small*, 2000 ME 182, ¶ 5, 763 A.2d 104, 105 (citing *State v. Varney*, 641 A.2d 185, 187 (Me. 1994)).

[¶ 27] Here the court instructed the jury that:

> mere presence at the scene of the crime without anything more does not prove that a person is an accomplice to a crime; however, when a defendant's presence has been proven beyond a reasonable doubt, the State need only prove any conduct that intentionally promotes or facilitates the crime, however slight.

We have previously upheld similar instructions. *State v. Pheng*, 2002 ME 40, ¶ 9, 791 A.2d 925, 927–28 (citing *State v. Kaler*, 1997 ME 62, ¶ 7, 691 A.2d 1226, 1229; [1]

*State v. Libby*, 435 A.2d 1075, 1077 (Me. 1981)).[2]

[¶ 28] The trial court did instruct the jury that the State had to prove the presence of the defendant beyond a reasonable doubt, and that the defendant did something beyond merely stand there. The trial court reminded the jury numerous times that the State had the burden of proving *each* element of the crime beyond a reasonable doubt. There is no reasonable possibility that the jury verdict would have differed had a different instruction been given. Thus, there was no error in the instruction.

B. Gauthier's Sixty–Year Sentence did not Violate his Rights to a Fair Trial and Due Process

[¶ 29] Gauthier conceded at oral argument that our decision in *Libby v. State*, 2007 ME 80, ¶¶ 8, 10, 926 A.2d 724, 727, resolved his claim that Maine's sentencing scheme violates the Sixth Amendment. In *Libby*, we reiterated the rule that a defendant does not have a right to a sentence that is less than the statutory maximum, and that *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and its progeny, do not require a jury finding for sentences above the statutory minimum, but within the statutorily established range. *Libby*, 2007 ME 80, ¶¶ 8, 10, 926 A.2d at 727. Thus, here, where the statutory maximum is life in prison,[3] any finding by the sentencing

---

1. In *Pheng*, the we stated that: "mere presence at the scene when a crime is committed is not sufficient to establish accomplice liability, once presence is proven, accomplice liability may attach upon the State's proof of any conduct promoting or facilitating, however slight, the commission of the crime." *State v. Pheng*, 2002 ME 40, ¶ 9, 791 A.2d 925, 927.

2. In *Pheng*, *Kaler*, and *Libby*, however, the issue was not whether the instruction clearly informed the jury that the State had the burden of proving, beyond a reasonable doubt,

accomplice liability. Instead, the issue in those cases was whether there was sufficient evidence, beyond the defendant's mere presence, to convict him as an accomplice. *Pheng*, 2002 ME 40, 791 A.2d 925; *State v. Kaler*, 1997 ME 62, 691 A.2d 1226; *State v. Libby*, 435 A.2d 1075 (Me.1981).

3. A person convicted of murder "shall be sentenced to imprisonment for life or for any term of years that is not less than 25." 17–A M.R.S. § 1251 (2006).

court did not extend the sentence beyond the statutory maximum, and therefore, jury findings were not required.

## C. Gauthier's Sixty–Year Sentence was not the Result of a Misapplication of Principles of Law or an Abuse of the Sentencing Court's Discretion

[¶ 30] Gauthier asserts the sentencing court ignored his sentencing memo to the court in setting his basic sentence.[4] He argues that although this was a serious crime, the manner in which it was carried out did not rise to such a level as to justify a higher than average basic sentence.[5]

▆▆ [¶ 31] We review the setting of basic sentences de novo, for the misapplication of principles of law. *State v. Sweet,* 2000 ME 14, ¶ 14, 745 A.2d 368, 372. Here, the court did not err in applying the principles of sentencing. It considered the evidence carefully, reviewed and compared other murder sentences, and imposed a basic sentence after considering *only* the nature and seriousness of the crime. *See Hewey,* 622 A.2d at 1154.

▆▆ [¶ 32] Gauthier asserts that the sentencing court failed to properly consider mitigating factors, including his youth, mental health, and substance abuse problems, in setting his maximum sentence. Additionally, he argues the sentencing court improperly considered "aggravating" factors, such as an "alleged aggravated assault offense" for which he was never indicted,[6] and the LSI–R assessment.

▆▆ [¶ 33] Because the trial court is in a better position to observe, review, and weigh these competing factors, we review the second stage of the sentencing process for an abuse of discretion. *Sweet,* 2000 ME 14, ¶ 15, 745 A.2d at 372–73. Here, the sentencing court did not abuse its discretion in increasing Gauthier's basic sentence by ten years when it found the many aggravating factors [7] outweighed the few mitigating factors.[8] Even if the sentencing court had considered Gauthier's youth and mental health as mitigating factors, it would not have been an abuse of discretion to find the many aggravating

---

4. Gauthier's sentencing memo is of limited use because it does not indicate the basic sentence each defendant listed received, and merely provides the final sentence imposed after step two of the sentencing process.

5. Gauthier's sentencing memo indicated that thirty-six years is the average sentence in murder cases.

6. In taking into consideration Gauthier's prior bad acts, the sentencing court recognized that Gauthier was never indicted on the charge that he assaulted an elderly man with a baseball bat. Even without a conviction, the court can properly consider this, despite Gauthier's assertion to the contrary, if the information is relevant and reliable. *See State v. Hewey,* 622 A.2d 1151, 1154–55 (Me. 1993); *see also State v. Berube* 1997 ME 165, ¶ 14, 698 A.2d 509, 514. The sentencing court, after looking at the record on its own at the District Attorney's office, determined the failure to indict was based on an oversight on the part of the DA's office. The sentencing

court found the information relevant and reliable based on the fact that officers who witnessed the attack, who had to physically restrain and pepper spray Gauthier in order to force him to stop attacking the man, wrote the police reports. The court did say it would not carry as much weight in its decision as that of a conviction.

7. The sentencing court found Gauthier showed no remorse or empathy; took no responsibility for his actions; was at high risk of re-offending; had a prior history of assaults, burglary, and disorderly conduct; and had a reckless disregard for the lives of others.

8. The only mitigating factor the court found was Gauthier appealed his discharge from community college. The court did note that Gauthier eventually flunked out of the college program.

factors outweighed these few mitigating factors.

[¶ 34] Finally, Gauthier argues, based on the nature and seriousness of this crime, and considering all of the aggravating and mitigating factors, that a sentence of sixty years is excessive.

[¶ 35] We review the sentence, in its entirety, for an abuse of discretion. *Sweet*, 2000 ME 14, ¶ 22, 745 A.2d at 375. A sixty-year sentence is not excessive in this case, and the sentencing court did not abuse its discretion or commit an error of law. Thus, the sentencing court's imposition of a sixty-year sentence was not erroneous.

The entry is:

Judgments affirmed.