MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:        2025 ME 27
Docket:          Aro-24-127
Argued:          January 7, 2025
Decided:         March 18, 2025

Panel:           STANFILL, C.J., and MEAD, HORTON, CONNORS, LAWRENCE, and DOUGLAS, JJ.

STATE OF MAINE

v.

ETHAN C. GERVAIS

CONNORS, J.

[¶1]  Ethan C. Gervais appeals from a judgment of conviction entered by the trial court (Aroostook County, *Nelson, J.*) for domestic violence assault (Class D), 17-A M.R.S. § 207-A(1)(A) (2023);[1] tampering with a witness, informant, juror, or victim (Class B), 17-A M.R.S. § 454(1-B)(A)(2) (2024); domestic violence criminal threatening (Class D), 17-A M.R.S. § 209-A(1)(A) (2023);[2] and violating a condition of release (Class E), 15 M.R.S. § 1092(1)(A)

---

[1] Title 17-A M.R.S. § 207-A(1)(A) has since been amended, though the amendment is not relevant in the present case.  *See* P.L. 2023, ch. 465, § 2 (effective Oct. 25, 2023) (codified at 17-A M.R.S § 207-A(1)(A) (2024)).

[2] Title 17-A M.R.S § 209-A(1)(A) has since been amended, though the amendment is not relevant in the present case.  *See* P.L 2023, ch. 465, § 7 (effective Oct. 25, 2023) (codified at 17-A M.R.S. § 209-A(1)(A) (2024)).

(2024) after a two-day jury trial.  On appeal, Gervais challenges (A) the court's admission of photographs of Facebook messages between him and the victim, (B) the court's admission of testimony regarding Gervais's drug use, (C) the court's decision to allow the State to use the term "victim" in its closing argument, and (D) the prosecutor's statements in closing that Gervais argues voiced a personal opinion as to the evidence and credibility of a witness.  We affirm the judgment.

## I.  BACKGROUND

[¶2]  Viewing the evidence in the light most favorable to the verdict, the jury rationally could have found the following facts beyond a reasonable doubt. *See State v. Harding*, 2024 ME 67, ¶ 2, 322 A.3d 1175.

[¶3]   On February 25, 2023, Gervais was arrested and charged by complaint in docket AROCD-CR-2023-20088 with domestic violence assault of the victim in the case now on appeal; assault of his brother, who intervened between Gervais and the victim; and criminal mischief for destroying the victim's phone.   These charges stemmed from an incident at Gervais's apartment where he and the victim engaged in an argument during which Gervais threw a bong onto a glass coffee table, causing both to shatter.  Gervais then grabbed the chair on which the victim was sitting and pushed her over

backward, causing a glass entertainment center behind her to shatter. Gervais's brother, who lived in the apartment below, came up to investigate the disturbance, and after he intervened between Gervais and the victim, Gervais assaulted him and smashed the victim's phone. The victim ran outside and tried to drive away in her car, but Gervais followed her and climbed into the passenger seat, locking all the doors. As she began to drive, a police officer arrived. After speaking with Gervais and the victim, the officer placed Gervais under arrest. Gervais was later released on personal recognizance, conditioned upon him committing no new crimes and having no contact with the victim.[3]

[¶4] In early June 2023, Gervais was arrested again and charged in docket Aro-CR-23-20206 with burglary; tampering with a witness, informant, juror, or victim; aggravated criminal trespass; domestic violence assault; domestic violence criminal threatening; obstructing the report of a crime; and violating a condition of release.[4] The June charges stemmed from a series of Facebook messages between Gervais and the victim as well as an incident in

---

[3] Before trial, Gervais pleaded guilty to the assault and criminal mischief charges arising from the February 2023 altercation.

[4] The court set bail at ten thousand dollars in docket CR-2023-20206, and the State filed a motion to revoke Gervais's bail in docket CR-2023-20088. Gervais filed a motion to amend his bail in docket CR-2023-20088 and asked for 24/7 home confinement concurrent in both dockets. The court set bail concurrent in both dockets at one thousand dollars and required 24/7 home confinement, with limited exceptions, to be monitored by GPS.

4

May 2023 in which Gervais entered the victim's residence and "came at [her]," pinning her to her bed. The State filed a motion to join the charges from the two dockets, which the court granted in September 2023.

[¶5] Prior to trial, Gervais filed two motions in limine at issue on appeal. The first sought to prevent the State from using the term "victim" throughout the trial. The court partially granted the motion by limiting the term's use to the State's closing. The second motion sought to preclude testimony regarding any history of domestic violence between Gervais and the victim, any allegations of injuries to their son, and any testimony regarding Gervais's previous drug use. The trial court reserved ruling on the motion, noting the difficulty of ruling on this type of evidence in a vacuum, and indicated that it would assess admissibility under Maine Rules of Evidence 404(b) and 403 if an objection was made when the evidence was offered during trial.

[¶6] The case went to trial on February 6 and 7, 2024. During the victim's direct testimony, the State and the victim engaged in the following exchange:

Q: And is there anything that would cause him to act differently towards you?

A: Drugs and alcohol.

Q: Okay, when you say drugs and alcohol, I think everyone knows what alcohol is. What do you mean when you say drugs?

A: Cocaine.

Q: Okay, um how would that change his behavior towards you?

A: He was mean and he didn't have patience for anything or anyone around him.

[¶7] On cross-examination, Gervais's counsel questioned the victim regarding why it took her approximately three weeks to report the May incident when Gervais pinned her to the bed. The victim explained that one of the reasons she eventually made the report to law enforcement was that she saw Gervais "meeting up with . . . his former drug dealer with [her] son in the truck and [she] was upset."

[¶8] The prosecutor revisited this testimony during the State's closing to help explain the delayed report, saying, "Here, [the victim] testified that she didn't report it until June 2nd. And what does she say happened on that day and the day prior? On that day, she said that he had followed her down the road and it made her scared. The day prior, she said that she saw him with a person who at least in the past had been a drug dealer to Mr. Gervais."

[¶9] During the trial, Gervais did not object to any of these references to drug use.

[¶10] In the State's closing, the prosecutor made the following comments that also did not draw an objection from Gervais's counsel at trial but are now challenged on appeal:

- If you're . . . a reasonable person sitting in a chair, having that chair flipped and landing on glass, a reasonable person would find that that is offensive physical contact.

- After speaking with [Gervais's brother], [the police officer] had the presence of mind to speak with the victim once again, privately this time in his cruiser without the defendant present. And then she told him what really happened.

- [Y]ou'll see in the other exhibits that you will get to review that he continues to threaten her and tell her that her ex-husband . . . will be leaving in a gucking body bag or ambulance. I think he misspoke on the gucking, but I'm not gonna . . . fault him for that.

- Now, I guess the last thing is, um, we have a name for the kind of a person who tells the story the exact same way every time they are asked about it. And the name for that person is an actor. I put to you that what -- the stories that you heard -- stories is the wrong word. The testimony that you heard was an expression of the same truth.

[¶11] In rebuttal, the prosecutor made the following statements, which are also challenged on appeal:

- Now, I think there's a few things that my friend had said that I feel the need to correct.

- Lying implies a certain intention that I find -- I think you'll find was not present. What [the police officer] did was he incorrectly indicated on a probable cause report that he had received back witness statements. And that was a sworn document he had -- and he had an obligation to be sure that that was the case, that he had in fact received those witness statements. And in his full report, he corrected and said he did not receive written statements; and he also corrected that when given the opportunity when questioned on it before another proceeding. I don't think that based on that you can say that he lied. It was a misstatement. We all make misstatements. We all say things

that we wish we hadn't, and we all regret things that we did do. But to call it lying is, I think, a bridge too far.

[¶12] After the State finished its rebuttal argument, the court sua sponte issued the following instruction:

I just want to make clear, you've not heard any evidence since you came back up here. The words of counsel are not evidence. You've heard some phrases about perhaps what counsel may think. That's not material. It's what you develop for thoughts and impressions on the evidence during deliberations that count. You folks determine the credibility of the witnesses and you folks weigh the evidence and find the facts, and so that is up to you and it's your task.

After the jury retired for deliberations, the court told the prosecutor and defense counsel that it had issued this instruction due to the prosecutor's improper expression of a personal opinion on the evidence.

[¶13] The jury returned guilty verdicts on the charges of domestic violence assault; tampering with a witness, informant, juror, or victim; domestic violence criminal threatening; and violation of a condition of release. The jury acquitted Gervais on the charges of burglary and obstructing the report of a crime.

[¶14] The court sentenced Gervais to seven years of incarceration, all but two of which were suspended, and three years of probation for tampering with the victim; six months for domestic violence; six months for assault; and sixty

8

days for criminal mischief, with all of the terms to run concurrently. Following sentencing, Gervais timely appealed. *See* M.R. App. P. 2B(b)(1); 15 M.R.S. § 2115 (2024).

## II. DISCUSSION

### A. The court properly admitted the Facebook messages between Gervais and the victim.

[¶15] Gervais argues that there was insufficient foundation for the admission of the Facebook messages between him and the victim because there was no direct evidence that he sent the messages. Maine Rule of Evidence 901(a) requires the State to produce evidence sufficient to support the finding that Gervais was the person who sent the Facebook messages to the victim. *See State v. Marquis*, 2017 ME 104, ¶ 15, 162 A.3d 818 (requiring "the State, as the party offering the text messages, to produce evidence sufficient to support a finding that [the defendant] was the person who sent them" (quotation marks omitted)). Rule 901(b)(1) provides that testimony from a witness with knowledge is sufficient to authenticate or identify evidence. *See also State v. Webster*, 2008 ME 119, ¶ 20, 955 A.2d 240 ("M.R. Evid. 901(b)(1) provides that the testimony of a witness with knowledge that a matter is what it is claimed to be is an adequate method of authentication." (quotation marks omitted)). We have described this process as "a flexible approach to authentication reflecting

a low burden of proof." *State v. Coston*, 2019 ME 141, ¶ 8, 215 A.3d 1285 (quotation marks omitted).

[¶16] At trial, Gervais objected to the admission of State's exhibit two, which is the first of a series of photographs taken by law enforcement of the victim's phone displaying Facebook messages between the victim and Gervais. After the objection, a sidebar ensued in which Gervais's counsel argued that the messages were inadmissible under *Marquis*, 2017 ME 104, ¶ 15, 162 A.3d 818. That objection preserved the challenge to exhibit two's admissibility, and we review its admission for an abuse of discretion and the trial court's underlying factual findings for clear error. *See State v. Gurney*, 2012 ME 14, ¶ 36, 36 A.3d 893. We conclude that the trial court did not err or abuse its discretion in admitting exhibit two.

[¶17] The victim testified that she and Gervais were previously in a romantic relationship; they had lived together but had broken up multiple times over the two and a half years they were together. During this time, they usually communicated through Facebook Messenger. Their communications included using the app to call one another. One of those calls appears at the top of the victim's phone screen in State's exhibit two. The victim testified that the call at the top of the screen was between her and Gervais and that during the

call, Gervais told her "[t]hat we all would regret it" if she did not change her statement to law enforcement. The victim further testified that the account shown in the State's exhibits was the same account that Gervais normally used to message her.[5]

[¶18] The victim's testimony provides sufficient support for the court's finding that the State met Rule 901's foundational requirement. *See State v. Turner*, 2001 ME 44, ¶ 6, 766 A.2d 1025 (stating that a jury could have rationally concluded that the defendant authored the emails from his email address even though no direct evidence was offered to establish the same).

[¶19] When ruling on exhibit two, the court added that if the State developed a similar foundation for the remainder of its Facebook exhibits, the court's "ruling [was] *likely* to be consistent with the ruling on Exhibit 2." (Emphasis added.) The State's remaining exhibits, now challenged on appeal, were admitted without objection and, therefore, are reviewed only for obvious error. *See State v. Gagne,* 349 A.2d 193, 197 (Me. 1975) (to preserve an objection, a defendant must afford the trial court an opportunity to make "a definitive ruling" and thus, when the defendants did not resurrect their

---

[5] There was also testimony from the victim's mother that Gervais's profile picture contained a motorcycle and a young child and that the child was her grandson. The picture shown on the exhibits matches that description.

argument after the trial court indicated that it would address the issue "when we reach it," the objection was reviewed on appeal only for obvious error); *see also* M.R. Evid. 103(a)(1)(A) (a claim of error in a ruling to admit or exclude evidence is not preserved unless the party "[t]imely objects"); M.R. Evid. 103(e) ("A pretrial objection to or proffer of evidence must be timely renewed at trial unless the court states on the record, or the context clearly demonstrates, that a ruling on the objection or proffer is final."); M.R. Evid. 103 restyling note, Nov. 2014 (noting that Rule 103 puts the burden on counsel to renew an objection made in limine "or otherwise before the evidence would be offered at trial, unless the trial judge or the circumstances make it clear that the previous ruling was indeed final").

[¶20]   Maine Rule of Unified Criminal Procedure 52(b) dictates that "[o]bvious errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."  To constitute obvious error, "there must be (1) an error, (2) that is plain, and (3) that affects substantial rights.  If these conditions are met, we will exercise our discretion to notice an unpreserved error only if we also conclude that (4) the error seriously affects the fairness and integrity or public reputation of judicial proceedings."  *State v. Pabon*, 2011 ME 100, ¶ 29, 28 A.3d 1147.  We have

previously stated that an error is plain when the trial court is "derelict in countenancing it, even absent the defendant's timely assistance in detecting it." *State v. Haji-Hassan*, 2018 ME 42, ¶ 18, 182 A.3d 145 (quotation marks omitted).

[¶21] Here, there was no error, let alone obvious error. In addition to the foundation for State's exhibit two discussed above, *see supra* ¶ 17, the victim testified that exhibits three through seven depicted conversations between her and Gervais about changing her statement to law enforcement regarding the February 2023 incident. The victim further testified that exhibits nine through twenty-eight were communications between her and Gervais and contained a series of threatening statements that he made to her, including threatening that if she did not answer her phone she would "answer to [him] in person" and that her ex would be "leaving in a . . . body bag." These exhibits were not objected to, and the victim's testimony was sufficient to provide the necessary foundation and authentication for their admission.

## B. The admission of testimony referencing Gervais's drug use does not rise to the level of obvious error.

[¶22] Gervais argues that the trial court erred and abused its discretion by denying his motion in limine to preclude testimony regarding his drug use because admission of the testimony violated Maine Rules of Evidence 401, 403,

and 404(b).  The court, however, never ruled on the motion in limine.  Instead, when addressing the pretrial motion, the court reserved its ruling to see how the evidence was presented and whether there were timely objections.  The court added that it would watch the State's presentation, and if it went too far down the road of constituting propensity evidence, the court would sustain an objection "if there's one made."  No such objection was made.  Therefore, once again, we apply an obvious error standard of review.

[¶23]  As discussed above, *see supra* ¶ 20, an obvious error is "a seriously prejudicial error tending to produce manifest injustice."  *State v. Perry*, 2006 ME 76, ¶ 15, 899 A.2d 806 (quotation marks omitted).  The crux of the obvious error analysis is "whether the obviousness of the error and the seriousness of the injustice done to the defendant thereby are so great the Law Court cannot in good conscience let the conviction stand."  *State v. Daley*, 440 A.2d 1053, 1055 (Me. 1982) (quotation marks omitted).  Although problematic, the admission of the testimony regarding Gervais's previous drug-related activity does not rise to this level of error.

[¶24]  Character and propensity evidence is generally excluded because it invites the jury to determine guilt on an improper basis instead of the evidence establishing the elements of the crime.  *See State v. Wells*, 423 A.2d

221, 223 (Me. 1980) ("[F]acts evidencing the defendant's bad character, when introduced by the State, would be likely to arouse the jury's emotions against the defendant with resulting undue hostility toward him, while evidence of good character presented by the defendant might infuse into the case an excess of sympathy in his favor."). Maine Rule of Evidence 404(b) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."

[¶25] During the State's direct examination of the victim, the prosecutor elicited testimony that Gervais uses cocaine and drinks alcohol, and when he does so, he becomes more aggressive and loses patience for those around him. The prosecutor then asked whether Gervais used cocaine the night of the February 2023 incident when he pushed the victim's chair over, causing the entertainment center to shatter. The victim testified that she never really knew when he used cocaine because he did it behind her back.

[¶26] At oral argument before us, the prosecutor explained that the State anticipated the victim to testify "that immediately prior to assaulting her, [Gervais] had used cocaine and that when he used cocaine, his behavior was different, and he was more aggressive." The evidentiary value of the

anticipated testimony was to establish that Gervais becomes aggressive when he uses cocaine, that he used cocaine the night of the February 2023 altercation, and that he became aggressive before assaulting the victim.

[¶27]  This is a problematic line of inquiry.  *See State v. Stanley*, 2000 ME 22, ¶ 8, 745 A.2d 981 ("Evidence of a person's character or of a person's bad acts is generally not admissible *to prove that that person acted in conformity therewith*." (emphasis in original)); *Wells*, 423 A.2d at 224 ("[T]he prosecution is prohibited from introducing in its case-in-chief evidence of a pertinent trait of the accused's character for the purpose of proving that he acted in conformity therewith on a particular occasion.").

[¶28]  The admission of the victim's testimony, however, does not rise to the level of obvious error, i.e., an error after which we could not in good conscience let the conviction stand.  *See Daley,* 440 A.2d at 1055.  When asked whether Gervais used cocaine before assaulting her in February 2023, the victim answered "no," but then clarified that she never really knew because he hid his cocaine use.  Therefore, although the testimony was concerning because of its propensity implications, its admission did not amount to obvious error because the victim's response limited the line of inquiry.  *See Pabon*, 2011 ME 100, ¶ 19, 28 A.3d 1147.

**C.** **The trial court did not abuse its discretion by allowing the State to use the term "victim" in its closing argument.**

[¶29] Gervais's motion in limine asked the court to preclude the State or its witnesses from using the term "victim" at any point during the trial. The court partially granted the motion, ruling that it would "only refer to the victim preceded by the word alleged. The State and all witnesses during the trial shall only refer to the alleged victim by name. However, in closing, the State is free to use the word victim because that's argument and . . . [is] fair game." Gervais now argues that the court's ruling allowed the prosecutor to express an opinion on the evidence and bolster the credibility of its central witness, pushing the jury to accept her version of events. We affirm the trial court's ruling.

[¶30] Generally, the fact that the trial court "acted on a motion in limine does not relieve counsel of making objections." *State v. Sykes*, 2019 ME 43, ¶ 13, 204 A.3d 1282. We have, however, recognized an exception to this general rule where the record demonstrates that the trial court's ruling was final, i.e., the ruling unequivocally resolved the issues presented in the motion. *See State v. Allen*, 2006 ME 21, ¶ 9 n.3, 892 A.2d 456. Here, the trial court's ruling on Gervais's motion in limine comprehensively resolved the use of the term "victim" during the trial, and we review the ruling for abuse of discretion and

the court's legal conclusions de novo.[6] *See State v. Dube*, 2014 ME 43, ¶ 8, 87 A.3d 1219.

[¶31]  The use of the term "victim" during a criminal trial can raise serious concerns.  If there is no dispute that a crime was committed and the question is whether the defendant committed the crime, then reference to the subject of the crime as a victim might not be problematic.  *See Jackson v. State*, 600 A.2d 21, 24 (Del. 1991) ("The term 'victim' is used appropriately during trial when there is no doubt that a crime was committed and simply the identity of the perpetrator is in issue.").  But if there is a dispute as to whether any offense occurred, then it is correct to exclude the use of the term during the evidentiary stage of trial, at least when the complaining witness's credibility is central to the State's ability to prove its case.  *See State v. Wigg*, 889 A.2d 233,

---

[6] Arguably, in order to preserve his objection, Gervais should have clarified his position after the trial court ruled on his motion in limine.  In his written motion, Gervais moved "that neither the attorney for the State nor the Court refer to [the victim] as a 'victim.'"  When taking up the motion, the court asked for the State's position, and the prosecutor answered that it believed it "should be allowed to call [the victim] a victim."  The court asked whether there was anything "further from the defense" to which defense counsel said "no."  The court said the "motion [was] granted," but in the course of making its ruling, explained that in its closing the State would be "free to use the word victim because that's argument."  The court then asked whether either side had any questions.  The prosecutor asked some clarifying questions regarding the ruling, after which the trial court turned to defense counsel, who said that she "didn't believe there's anything else . . . to do."  Gervais made no further objection or argument regarding the court allowing the term "victim" during closing arguments.  Thus, at least arguably, it was not clear whether Gervais was dissatisfied with the court's ruling.  Because the trial court's ruling passes muster whether we deem the claim preserved or subject only to obvious error review, however, we need not determine whether the argument was in fact preserved.  *See infra* ¶ 37.

236 (Vt. 2005) ("[W]here the commission of a crime is in dispute and the core issue is one of the complainant's credibility, it is error for a trial court to permit a police detective to refer to the complainant as the 'victim.'").

[¶32] Whether the State may use the term in closing depends on context. It is impermissible for a prosecutor to offer a personal opinion regarding the credibility of a witness. *See, e.g.*, *State v. Dolloff*, 2012 ME 130, ¶ 60, 58 A.3d 1032; *State v. Robbins*, 2019 ME 138, ¶¶ 6-12, 215 A.3d 788. Hence, particularly if the complaining witness's credibility is the focus of the trial and the context of the use of the term suggests that the prosecutor is stating a personal opinion, then its use is improper. Conversely, as long as the term is used in a context that does not suggest that the prosecutor is expressing a personal opinion but rather is urging the jury, based on the evidence, to find that the witness was in fact a victim, then the argument is proper. *See State v. Hunt*, 2023 ME 26, ¶ 37, 293 A.3d 423 (the State's argument did not contain error because it "remained focused on findings and inferences that the jury could make based on" the evidence and "not on the prosecutor's personal opinion of any witness's credibility").

[¶33] Needless to say, this is not a bright line, and a prosecutor's safer route is to avoid using the term altogether, if possible. *See Commonwealth v.*

*Cadet*, 40 N.E.3d 1015, 1023 (Mass. 2015) ("[W]e emphasize that the better practice is for the prosecutor, defense counsel, the judge, and all of the witnesses to refrain from describing [the subject of the alleged crime] as the 'victim.'").

[¶34] In this instance, however, we need not decide whether the prosecutor crossed the line by using this term because the error was harmless if he did. *See* M.R.U. Crim. P. 52(a) (an error is harmless if it "does not affect substantial rights"); *State v. Nightingale*, 2023 ME 71, ¶ 27, 304 A.3d 264 (an error is harmless if "it is highly probable that the jury's determination of guilt was unaffected by the prosecutor's comments").

[¶35] As a threshold matter, it would have been difficult for the prosecutor to avoid the use of the term "victim" altogether because two of the crimes charged expressly use the term in their statutory language.[7] Hence, the prosecutor began his closing by identifying the complaining witness as a "victim" and did so within the context of summarizing evidence, which can be

---

[7] *E.g.*, 17-A M.R.S. § 207-A(1)(A) (2023) provides that "[a] person is guilty of domestic violence assault if: . . . [t]he person violates section 207 and *the victim* is a family or household member as defined in Title 19-A, section 4102, subsection 6." (Emphasis added.) 17-A M.R.S. § 454(1-B)(A)(2) (2024) provides that "[a] person is guilty of tampering with *a victim* if, believing that an official proceeding, as defined in section 451, subsection 5, paragraph A, or an official criminal investigation is pending or will be instituted, the actor: . . . [i]nduces or otherwise causes, or attempts to induce or cause, a victim . . . [t]o withhold testimony, information or evidence." (Emphasis added.)

viewed as orienting the jury toward the elements of one of the crimes charged. Other references were also linked with the evidence to the charged crime, e.g., the prosecutor argued that a message communicated by Gervais "on its own is evidence of tampering with a victim."

[¶36]  The court also made very clear in multiple instructions to the jury that the lawyers' argument was just that, argument, and that it was the jury's role to render its verdict based on the evidence and not the arguments.  The court specifically stated, when addressing the tampering charge, that it was the jury's province to determine whether the witness was a victim.

[¶37]  The prosecutor used the word "victim" four times in closing and once more in rebuttal.  These limited references in the context in which the terms were used in this instance were permissible or at least harmless, as they did not go beyond what a jury may expect from a prosecutor, arguing that the evidence has established guilt beyond a reasonable doubt.

**D.  Although the State committed prosecutorial error in its closing, it did not rise to the level of obvious error.**

[¶38]  Although not every use of the phrase "I think" constitutes prosecutorial error, *see Dolloff*, 2012 ME 130, ¶ 57 n.16, 58 A.3d 1032, here, as the State conceded at oral argument, the prosecutor's use of the phrase in this case was error.  The prosecutor referred to his use of the phrase "I think" as

minimally registering on a scale of transgression.  We disagree.

[¶39]  The prosecutor's personal opinion never bears on or is relevant to the jury's determination.  Here, the prosecutor stated that he did not think the police officer lied and that "[w]e all say things that we wish we hadn't, and we all regret things that we did do.  But to call it lying is, I think, a bridge too far."  This is nothing more than an impermissible personal opinion regarding the credibility of a State's witness and is only one example of the prosecutor's problematic use of the phrase "I think" and expressions of personal opinion.  *See supra* ¶¶ 10-11.  Indeed, the transparently inappropriate language used by the prosecutor prompted the trial court sua sponte to instruct the jury as to which arguments were improper and immaterial to their consideration of the issues.

[¶40]  Gervais's counsel did not object to the State's closing or move for a mistrial after the court gave its curative instruction.  We therefore review the issue for obvious error, and in light of the trial court's timely curative instruction, we do not find that the error reached such a magnitude.  *See State v. Greene*, 512 A.2d 330, 334 (Me. 1986) (concluding that when the presiding justice, sua sponte, instructs the jury that what lawyers said in argument was not evidence and later instructs the jurors to view the evidence objectively and

at no time did the defendant move for a mistrial, such inaction fails to preserve the errors for appellate review).[8]

The entry is:

Judgment affirmed.

---

Jeremy Pratt, Esq. (orally), and Ellen Simmons, Esq., Camden, for appellant Ethan Gervais

Todd Collins, District Attorney, and John Inglis, Asst. Dist. Atty. (orally), Caribou, for appellee State of Maine

Aroostook County Unified Criminal Docket docket numbers CR-2023-20088 and CR-2023-20206
FOR CLERK REFERENCE ONLY

---

[8] Although not applied here, we note that when the trial is "infected by prosecutorial error, we are free to require a new trial based on our supervisory power regardless of the strength of the evidence against the defendant when necessary to preserve the integrity of the judicial system and to send a message that such conduct will not be tolerated." *State v. White*, 2022 ME 54, ¶ 35, 285 A.3d 262.