MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions

Decision:      2026 ME 48
Docket:        And-25-127
Argued:        January 6, 2026
Decided:       May 28, 2026

Panel:         STANFILL, C.J., and MEAD, CONNORS, LAWRENCE, DOUGLAS, and LIPEZ, JJ.

## STATE OF MAINE

v.

## TREVOR AVERILL

CONNORS, J.

[¶1]  Trevor Averill appeals from a judgment of conviction for manslaughter, 17-A M.R.S. § 203(1)(A) (2026), and the resulting sentence imposed by the court (Androscoggin County, *Archer, J.*).  Averill argues that certain evidence should have been excluded under M.R. Evid. 403 and 404(b), that he was convicted on less than sufficient evidence, that the State committed prosecutorial error in closing argument, and that his sentence was improper. We affirm.

## I.  BACKGROUND

[¶2]  "We recite the evidence in the light most favorable to the verdict." *State v. Harding*, 2024 ME 67, ¶ 2, 322 A.3d 1175.

[¶3]   In July 2020, Averill was residing with his girlfriend and their two-month-old child.  In the early morning of July 22, 2020, the child began fussing, and Averill picked her up and took her downstairs to feed her.  About five to eight minutes later, Averill called for his girlfriend, who went downstairs, found that the child had gone limp, and called 9-1-1.  Officers responded and found Averill with the child, who was not breathing, had no pulse, looked "gray and ashy," and was cold to the touch.  Averill told the officers that he had been feeding the child and had brought her up to his shoulder to burp her when she gagged, and that she had been unconscious for five to ten minutes.  The child was taken to the hospital, where she died four days later.

[¶4]   Medical and post-mortem examinations showed that the child suffered injuries to the head and spine, including a skull fracture, intercranial bleeding at both the subdural and the subarachnoid layers, and retinal hemorrhages.  The child experienced a lack of oxygen and blood flow to the brain, which caused brain swelling, and experienced cardiac arrest.

[¶5]   On September 8, 2021, Averill was charged by indictment with depraved indifference murder, 17-A M.R.S. § 201(1)(B) (2026), and manslaughter, 17-A M.R.S. § 203(1)(A).  The court held a nine-day jury trial in January 2025.

[¶6]  The State's case consisted of testimony from twenty-two witnesses, including first responders to the scene, medical professionals who treated the child, the medical examiner who conducted the autopsy, a neuropathologist who consulted on the autopsy, and experts in pediatric neurology and neuroradiology, as well as evidence including body-camera footage depicting the initial emergency response, two recorded interviews of Averill, and a video recording of Averill in his home re-enacting the incident.  The evidence presented by the State reflected that the injuries that the child suffered were the result of a sudden impact to the skull and rotational or acceleration/deceleration type forces causing the shearing of blood vessels in the eyes and beneath the skull.  These injuries instantly stopped the child's breathing and were explicable only as the result of nonaccidental trauma.

[¶7]  Averill's defense consisted of testimony from expert witnesses in biomechanical engineering, pediatric radiology, and pediatric forensic pathology, as well as the child's mother.  His theory of the case was that the child had choked, causing a loss of oxygen that aggravated older brain injuries that had resulted from a prior accident in which Averill had dropped the child. Averill did not testify.

4

[¶8]  At the close of the trial, the jury returned a verdict of not guilty on the murder charge and guilty on the manslaughter charge.  On March 14, 2025, the court sentenced Averill to twenty-three years of imprisonment, with all but eighteen years suspended, and six years of probation.  Averill timely appealed. *See* M.R. App. P. 2B(b)(1).[1]

## II.  DISCUSSION

### A.  Rule 403 did not require exclusion of autopsy photos or body-worn camera footage.

#### 1.  The court did not abuse its discretion in admitting photographs from the autopsy of the child.

[¶9]  Averill contends that the court erred by admitting photographs of the child's autopsy on the ground that the danger of unfair prejudice generated by the photographs substantially outweighed the photographs' probative value. *See* M.R. Evid. 403.

[¶10]  A threshold issue is whether Averill has preserved the issue regarding the admission of these photographs.  Averill moved in limine to exclude "any and all photographs of the alleged victim in this case, both pre-death and post-death."  At the hearing on the motion in limine, however, defense counsel stated that he had "hard objections" to only two of the

---

[1]  Averill also sought leave to appeal his sentence, which the Sentence Review Panel granted on July 11, 2025. *State v. Averill*, No. SRP-25-128 (Me. Sent. Rev. Panel Jul. 11, 2025).

photographs now challenged on appeal, State's Exhibits 3 and 4. These were autopsy photographs of the child's face and upper body. As to the other photographs, defense counsel stated that he would "reserve the right to object." The court denied the motion in limine as to Exhibits 3 and 4, finding that the photographs were not gruesome and that "photographs such as this are not cumulative when they illustrate the expert's testimony and they're conveying relevant information to the jury in a much more complete and meaningful form than the stark, sterile, clinical words of a doctor and nurse could convey."

[¶11] Later, in a chambers meeting during trial, the State said that the autopsy photographs "that we did litigate" were "still subject to the prior objections." Defense counsel noted that there were photographs to which he had reserved the right to object but then stated that the State had "fixed them." The State then indicated that it had showed the photographs to defense counsel, and that the photographs were "all agreeable." The court asked if there was any objection to the admission of the photographs, and defense counsel stated that there was not. The photographs were ultimately admitted, and the medical examiner who conducted the child's autopsy referred to and explained each photograph in her testimony.

[¶12]  As for Exhibits 3 and 4, there was no objection at trial to their admission, and "[g]enerally, the fact that the trial court acted on a motion in limine does not relieve counsel of making objections." *State v. Gervais*, 2025 ME 27, ¶ 30, 334 A.3d 645 (quotation marks omitted).  We note, however, that the State and Averill agreed that the motion in limine preserved Averill's objections, and they made that agreement known to the court.  Arguably, this constituted "a sufficient basis in the record to alert the trial court and the opposing party to the existence of the issue," *see State v. Reeves*, 2022 ME 10, ¶ 35, 268 A.3d 281, and so we assume, without deciding, that the standard of review applicable to preserved objections applies to the admission of Exhibits 3 and 4.

[¶13]  The same cannot be said, however, about the remaining autopsy photographs.  Averill not only never objected to their admission, either at the hearing on the motion in limine or at trial, but also explicitly disclaimed any such objection.  Averill has thus waived appellate review of the issue as to those photographs. *See State v. Scott*, 2019 ME 105, ¶ 20, 211 A.3d 205 ("The Court will not undertake an obvious error review when a litigant affirmatively approves or consents to a court action." (alteration and quotation marks omitted)).  Accordingly, we consider only Exhibits 3 and 4, reviewing the court's

admission of these photographs over a Rule 403 objection for an abuse of discretion. *State v. Allen*, 2006 ME 21, ¶ 9 n.3, 892 A.2d 456.

[¶14] "[P]hotographs are admissible if they are (1) accurate depictions; (2) relevant; and (3) if their probative value is not outweighed by any tendency toward unfair prejudice." *Id.* ¶¶ 10, 13. "For purposes of Rule 403, prejudice means an undue tendency to move the fact finders to decide the issue on an improper basis." *State v. Michaud*, 2017 ME 170, ¶ 8, 168 A.3d 802 (quotation marks omitted).

[¶15] In considering the probative value of Exhibits 3 and 4, we note that the medical examiner displayed each photograph and noted, among other features, the presence of swelling in the child's scalp. Accordingly, the photographs were not simply cumulative evidence, as Averill argues, but were probative as to the child's symptoms at the time of her death as well as to the reliability of the testimony of the medical examiner, a key witness in the case. *See State v. Crocker*, 435 A.2d 58, 75-76 (Me. 1981) (stating that photographs of a victim were not "merely cumulative" of testimony from medical witnesses who described the victim's condition, because "[t]he pictures conveyed relevant information to the jury in a much more complete and meaningful form than could the almost clinical words of the doctors and nurses.").

8

[¶16]   The risk of unfair prejudice from Exhibits 3 and 4 was also minimal.   As the trial court correctly noted, the photographs were not gruesome.   Although the photographs could have evoked an emotional response, as could any photographs depicting a deceased infant, they were not so inflammatory as to create a serious risk that the jury would decide the case on the basis of emotion.  *See Allen*, 2006 ME 21, ¶ 17, 892 A.2d 456 ("Any case with allegations of child abuse evokes emotions, but we allow photographs of abused children because we recognize that their probative value can, in any given case, outweigh the danger of unfair prejudice.").

[¶17]   Therefore, the court did not abuse its discretion in admitting Exhibits 3 and 4 over a Rule 403 objection.[2]

### 2.   The court did not abuse its discretion in admitting body-worn camera footage of the officers' initial response to the scene.

[¶18]   Averill contends that body-worn camera footage from one of the responding officers was also unfairly prejudicial and should have been excluded under Rule 403.

[¶19]   In response to Averill's Rule 403 objection, the court made the following ruling:

---

[2] Were we to consider Averill's contentions regarding the remaining autopsy photographs under an obvious error standard of review, we would affirm on the same basis.

I agree that the video is prejudicial. Any time I think you see a baby being subjected to CPR, it is going to be somewhat prejudicial. But I don't find it to be unfairly prejudicial. And it doesn't outweigh the probative value in showing the crime scene, any admissions made by the defendant, the information that was given by both the defendant and the mother. And seeing the defendant's demeanor as well as observing how the baby presented at the time that the first responders came to the scene, all of that is highly relevant to the [S]tate's theory of the case. And I also think it's probative of both innocence and guilt, depending upon how a jury were to take away the defendant's demeanor and the comments.

[¶20] We agree with the trial court that the body-worn camera footage was highly probative. Contrary to Averill's argument, this was also not cumulative evidence. Although one of the responding officers testified, including as to his memory of Averill's statements, that did not preclude the State from offering firsthand evidence of Averill's statements and demeanor at the time of the incident, especially because Averill's credibility was a central issue in the case. *See State v. Rossignol*, 580 A.2d 152, 153-154 (Me. 1990) (affirming admission of a video recording of defendant's confession, notwithstanding that an officer had already testified as to the substance of the confession, for the purpose of rebutting the defendant's claims of duress and coercion); *Crocker*, 435 A.2d at 75-76 (holding that photographs of a hospitalized victim were not cumulative, as they "conveyed relevant information to the jury in a much more complete and meaningful form than

could the almost clinical words of the doctors and nurses"); *cf. Michaud*, 2017 ME 170, ¶ 9, 168 A.3d 802 ("[T]he State is not required to accept a stipulation from the defendant. The State must be allowed, within the rules and the bounds of justice, to present its entire case.").

[¶21] Given the significant relevance of the body-worn camera footage, it was not an abuse of discretion for the trial court to determine that the probative value of the footage was not substantially outweighed by any risk of unfair prejudice. Accordingly, there was no error in the admission of the body-worn camera footage.

**B.** **The court did not err in admitting evidence of a rib fracture and skull fracture suffered by the child.**

[¶22] Averill argues that the court erroneously permitted the State to introduce evidence as to two injuries suffered by the child, a rib fracture and a skull fracture, which, Averill argues, constituted evidence of prior bad acts admitted for the purpose of showing Averill's propensity for abuse. *See* M.R. Evid. 404(b) ("Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."). Averill further argues that the evidence should have been excluded under Rule 403 to avoid unfair prejudice, confusion of the issues, and misleading the jury.

[¶23]  At trial, however, Averill did not object to the admission of evidence of these injuries.  Furthermore, at trial defense counsel stated that although he had debated raising an objection as to the rib fracture, he ultimately "decided not to raise that argument because it is kind of late in the game" and because the issue had been "sort of" litigated by prior counsel at an earlier time.  The court then asked if Averill was objecting, and defense counsel stated, "We're not objecting to it," and said that Averill "decided not to pursue it."  Furthermore, Averill relied on the rib fracture evidence in cross-examination and closing argument to argue that it would be inconsistent for the child to have suffered abuse serious enough to fracture her rib previously without causing a brain injury at that time.  Averill has accordingly waived any argument as to the admission of evidence of the rib fracture.[3]  *See Scott*, 2019 ME 105, ¶ 20, 211 A.3d 205.

[¶24]  As for the skull fracture evidence, Averill failed to object but did not affirmatively waive an objection to the admission of the evidence.

---

[3] Were we to consider the admission of the rib fracture evidence under an obvious error standard of review, Averill's argument would not succeed.  The rib fracture evidence was introduced to prove lack of mistake, because Averill's defense was that the death of his child resulted from a series of accidents.  *See State v. Lockhart*, 2003 ME 108, ¶¶ 34-37, 830 A.2d 433 (holding that the admission of testimony that the defendant had previously engaged in domestic violence toward the victim was not obvious error, where the testimony was admitted to prove absence of mistake or accident as to murder)*.*  The court properly instructed the jury that evidence of prior acts could not be used to prove Averill's propensity for abuse.  Under the circumstances, there was no obvious error.

Accordingly, we review for obvious error. "To constitute obvious error, there must be (1) an error, (2) that is plain, and (3) that affects substantial rights. If these conditions are met, we will exercise our discretion to notice an unpreserved error only if we also conclude that (4) the error seriously affects the fairness and integrity or public reputation of judicial proceedings." *Gervais*, 2025 ME 27, ¶ 20, 334 A.3d 645 (quotation marks omitted).

[¶25] Here, the State sought to prove that the skull fracture was a result of Averill's conduct on the night of the incident that caused the child's death. This theory was supported by evidence that the skull fracture was "consistent with about the time that the incident occurred," and that "it was more likely that this fracture was closer in time to when the child presented to the hospital" than a month earlier, when the child allegedly suffered an accidental head injury. The court did not err, much less obviously err, by admitting the evidence and not adopting Averill's position that the skull fracture predated the incident.

## C.    The evidence was sufficient to find Averill guilty of manslaughter.

[¶26] Averill argues that the evidence at trial was insufficient to support a finding that Averill caused the child's injuries. "On appeal, we review the denial of a motion for judgment of acquittal by viewing the evidence in the light most favorable to the State to determine whether a jury could rationally have

found each element of the crime proved beyond a reasonable doubt.  The jury may draw all reasonable inferences from the evidence presented at trial." *State v. Fyans*, 2025 ME 78, ¶ 9, 345 A.3d 18 (alteration and quotation marks omitted).[4]

[¶27]  "To convict a person of manslaughter, the State must prove that the defendant recklessly, or with criminal negligence, caused the death of another human being." *Harding*, 2024 ME 67, ¶ 14, 322 A.3d 1175 (alterations and quotation marks omitted).  "[A] criminal conviction is not unsupported by record evidence . . . merely because the State did not present direct evidence as to the defendant's *exact* actions in committing the crime," and a manslaughter conviction may rest upon circumstantial evidence.  *State v. Brown*, 2017 ME 59, ¶ 9, 158 A.3d 501.

[¶28]  Contrary to Averill's argument, there was sufficient evidence from which the jury could find that Averill caused the child's death.  Testimony from

---

[4]  Although Averill moved for an acquittal, on appeal we apply this test for evaluating the sufficiency of the evidence whether or not the defendant made a motion for a judgment of acquittal at trial.  *State v. Van Sickle*, 434 A.2d 31, 35 (Me. 1981).  That said, it is "in the interest of sound appellate and trial practice" that defense counsel "should move for acquittal or for a new trial when, in the judgment of counsel, sufficiency of the evidence is questionable."  *Id.*  "Such a motion, when appropriate, serves the valuable function of focusing the trial court's attention on the precise weakness in the evidence so that an intelligent and careful ruling can be made by the presiding justice.  Furthermore, such a motion may lead to the creation of a record from which the Law Court can better discern the context and nature of the asserted insufficiency of the evidence." *Id.* (citation omitted).

multiple medical professionals showed that the child suffered injuries, such as retinal hemorrhaging, that were associated with abusive head trauma and that would have stopped the child's breathing instantly. As Averill was the sole caretaker of the child when she stopped breathing, a rational factfinder could find beyond a reasonable doubt that Averill inflicted the child's injuries.[5] *See Harding*, 2024 ME 67, ¶¶ 6, 16-17, 322 A.3d 1175 (holding that evidence was sufficient to support conviction for manslaughter in abusive head trauma case, where the victim was in the care of the defendant when the victim became nonresponsive, and there was evidence that the victim suffered a severe brain injury that would have rendered the victim unresponsive "almost immediately" (emphasis and quotation marks omitted)).

---

[5] Averill also challenges the reliability of the medical testimony in several respects. First, he argues that the medical professionals indicated only "suspicions" and "concerns" for abusive head trauma. But this was not so. Indeed, one witness, an ophthalmologist, testified that retinal hemorrhaging of a kind suffered by the child "is really only seen with shaken baby nonaccidental trauma" and that in her opinion "to a medical degree of certainty," the child suffered abusive head trauma. Another witness, a child abuse pediatrician, testified that the child's "diagnosis was abusive head trauma." The medical examiner who conducted the autopsy also testified that the cause of death was an inflicted traumatic head injury.

Averill further argues that the medical diagnosis of abusive head trauma is a subject of controversy and that, accordingly, a manslaughter conviction may be premised upon abusive head trauma only "when there is evidence separate from expert testimony that would allow a jury to find a causal link." This argument, although presented as a sufficiency challenge, is essentially a challenge to the reliability of expert testimony on abusive head trauma. *See, e.g.*, *State v. Brackett*, 2026 ME 9, ¶ 64, 353 A.3d 967. This argument was affirmatively waived before the trial court, and, further, has not been adequately developed on appeal; accordingly, we do not address it. *See Scott*, 2019 ME 105, ¶ 20, 211 A.3d 205; *Mehlhorn v. Derby*, 2006 ME 110, ¶ 11, 905 A.2d 290.

**D.** **Although the State improperly included personal opinion as to the credibility of witnesses in closing argument, this error was harmless because the court gave a timely curative instruction.**

[¶29] Averill argues that the prosecutor improperly conveyed in closing argument her personal belief that Averill's expert witnesses were not credible because they had been hired, while also vouching for the credibility of the State's witnesses. Specifically, Averill objects to the following portion of the State's closing argument:

> You heard again from many experts, from both the [S]tate and the defense. But when you heard from those experts, I implore you to look at them as whether they were providing excuses, that they were looking selectively or with blinders, or trying to suggest distraction from the information that's really important. The defendant has given a very implausible story about what happened to [the child] and they hired experts to support that implausible story. That isn't reasonable doubt. It cannot overcome consistent medical evidence from treating doctors, consulting doctors, imaging, pathology, and the expert opinions of a pediatric neuroradiologist and a pediatric neurologist.
>
> Use your common sense. . . .

[¶30] Averill moved for a mistrial based on the above argument; the court denied the motion, but gave a curative instruction as follows:

> Now, members of the jury, before I ask defense counsel to present closing argument, I just want to remind you that you as the jurors, it's your job to determine the credibility of any witness. Regardless of who calls that witness to testify, it's your job as a part of the analysis to determine credibility. Not the lawyer's job, your job.

[¶31]  We review a preserved claim of prosecutorial error under the harmless error standard, under which we will reverse only for "error that affects the criminal defendant's substantial rights, meaning that the error was sufficiently prejudicial to have affected the outcome of the proceeding." *State v. Osborn*, 2023 ME 19, ¶ 21, 290 A.3d 558 (quotation marks omitted).

[¶32]  It is well established that "[p]rosecutors are permitted . . . to argue for any position or conclusion stated in the evidence, and to employ wit, satire and invective in arguing for that position or conclusion provided it is grounded in the evidence." *State v. Schmidt*, 2008 ME 151, ¶ 18, 957 A.2d 80 (quoting Robert W. Clifford, *Identifying and Preventing Improper Prosecutorial Comment in Closing Argument*, 51 Me. L. Rev. 241, 267 (1999)).  To that end, "[a] prosecutor commits no error by pointing out (if supported in the record) that an expert for the defense is being paid a consulting fee for services on the case," as "[p]ayment can be a legitimate factor to explore for motive and bias." *Harding*, 2024 ME 67, ¶ 22 n.9, 322 A.3d 1175.  But "[e]rror arises when a prosecutor asserts that a defense expert is lying *because* the expert is being paid a fee, uses denigrating language like 'hired gun,' or personally vouches that other witnesses not being paid a fee are telling the truth." *Id.*; *see also* Clifford, *supra* at 263 (noting that expressions of personal opinion on the credibility of

witnesses in argument "are prohibited because they invade the province of the jury to assess credibility of witnesses, and are particularly off-limits to prosecutors because they speak with the authority of the State and the potential for improper jury influence is greater").

[¶33]  Here, the State committed error by stating that "[t]he defendant has given a very implausible story about what happened to [the child] and they hired experts to support that implausible story."  The reference to the defendant's "implausible story" in connection with the hiring of experts "to support that implausible story" constituted at least an implicit assertion "that a defense expert is lying *because* the expert is being paid a fee."  *Harding*, 2024 ME 67, ¶ 22 n.9, 322 A.3d 1175.  But whatever prejudice resulted from this remark was cured by the instruction issued by the court.  *See State v. Dolloff*, 2012 ME 130, ¶ 32, 58 A.3d 1032 ("Only where there are exceptionally prejudicial circumstances or prosecutorial bad faith will a curative instruction be deemed inadequate to eliminate prejudice." (quotation marks omitted)).  Accordingly, the error was harmless.

**E.    Averill's sentence was not improper.**

    **1.    The sentencing court did not improperly consider Averill's exercise of his right to a jury trial.**

[¶34]  Averill argues that the sentencing court improperly considered as an aggravating factor his decision to stand trial.  During sentencing, at step two of the *Hewey* analysis, *see State v. Hewey*, 622 A.2d 1151, 1154-55 (Me. 1993), the sentencing court stated:

> The defendant, too, is plainly sad for what happened to his child, but he has never taken responsibility for his actions.  It's disturbing that the defendant claimed to medical personnel that [the child] went limp by choking on formula, which medically could not have caused her injuries.  This was a plain attempt to minimize the harm he inflicted and redirect the focus of inquiry.  The defendant's failure to be truthful with medical personnel at the critical time when they were trying to save his child's life, reflects his true character.  He put his own needs and desire to not be blamed for this horrific—horrific event over his child's medical needs.

Averill asserts that "a fair reading of the sentencing [court's] remarks suggests that it was influenced by [Averill's] decision to stand trial."  We disagree.

[¶35]  "We review questions of law, including the legality of a sentence, de novo."  *State v. Ellis*, 2025 ME 56, ¶ 22, 339 A.3d 794.  "Because [this issue was] not raised to the sentencing court, we review for obvious error."  *State v. Watson*, 2024 ME 24, ¶ 18, 319 A.3d 430; *see State v. Coleman*, 2024 ME 35, ¶ 24, 315 A.3d 698.

[¶36] "It is black-letter law that an accused cannot be punished by a more severe sentence because he unsuccessfully exercised his constitutional right to a trial." *Ellis*, 2025 ME 56, ¶ 24, 339 A.3d 794 (quotation marks omitted). "[A]ny consideration of a defendant's failure to take responsibility as an aggravating factor must be based on affirmative evidence in the record to support that finding, ordinarily because the defendant testified at the trial or allocuted at the sentencing hearing." *Id.* ¶ 26.

[¶37] Here, the court based its determination that Averill had failed to take responsibility on Averill's statements to medical personnel, not his decision to stand trial. Accordingly, the court's finding that Averill had failed to take responsibility was not improper.

### 2. The sentencing court's reference to prior injuries suffered by the child was not a misapplication of sentencing principles.

[¶38] Averill next argues that it was error for the sentencing court to find, in setting the basic sentence at the first stage of the *Hewey* analysis, *see Hewey*, 622 A.2d at 1154, that "[a]t some point prior to the event causing her death, [the child] sustained bruising, a rib fracture, and bleeding under her tongue . . . which are sentinel injuries that are red flags for abuse," where, Averill argues, there was no evidence that he was the cause of these injuries.

[¶39]   We review the sentencing court's determination of a basic sentence de novo for misapplication of sentencing principles. *State v. Seamon*, 2017 ME 123, ¶ 23, 165 A.3d 342.  Courts "have broad discretion in determining what information to consider in sentencing; they are limited only by the due process requirement that such information must be factually reliable and relevant."  *Id.* ¶ 24 (quotation marks omitted).  "Facts regarding uncharged criminal conduct may be considered during sentencing in order to obtain a complete and accurate picture of the person to be sentenced."  *Id.* (quotation marks omitted).  Furthermore, because Averill did not draw the sentencing court's attention to its allegedly erroneous finding, we review for obvious error. *State v. Goncalves*, 2025 ME 70, ¶ 43, 340 A.3d 639.

[¶40]   The objected-to findings were supported by trial testimony. Although there was no direct evidence that Averill caused these injuries, the evidence that these were "sentinel injuries" for abuse rendered them sufficiently relevant for the court to consider them.  We perceive no error in the court's determination of Averill's basic sentence.

3.   **The sentencing court did not abuse its discretion in applying the aggravating and mitigating factors in Averill's case.**

[¶41]  Averill finally contends that the court improperly considered the impact on the victim's family as an aggravating factor and abused its discretion

in giving this factor significant weight, because much of the victim's family requested leniency.[6]

[¶42] "We review the trial court's application of aggravating and mitigating factors in determining the maximum sentence for abuse of discretion," affording the sentencing court "significant leeway in what factors it may consider and the weight any given factor is due when determining a sentence." *State v. Woodard*, 2025 ME 32, ¶ 21, 334 A.3d 667 (quotation marks omitted). Here, the sentencing court considered Averill's "significant support" from family and friends as a mitigating factor but considered the impact on the victim's family as an aggravating factor, assigning this factor special weight per 17-A M.R.S. § 1604(7)(A) (2026). The court noted that it was considering not only the ongoing sorrow felt by the child's family at her death, but also that the child's mother would be losing Averill to incarceration, and that the relationship between the child's mother and grandmother had deteriorated. The court also considered, as noted above, that the defendant was not truthful with medical personnel about his child's condition. Ultimately, the court determined that the mitigating and aggravating factors were of nearly equal

---

[6] Averill also argues that the sentencing court erred in not considering the legislative sentencing purpose of minimizing correctional experiences. *See* 17-A M.R.S. § 1501(3) (2026). To the contrary, the sentencing court expressly considered this goal in the final step of the sentencing analysis.

weight.  On these facts, we cannot say that the court abused its discretion in weighing the aggravating and mitigating factors.

### III. CONCLUSION

[¶43]  Averill waived his challenge to all but two autopsy photographs, State's Exhibits 3 and 4.  Those photographs were properly admitted under M.R. Evid. 403, as was body-worn camera footage from a responding officer.  As for the evidence that Averill challenged under M.R. Evid. 404(b), the court did not obviously err by admitting evidence of the child's skull fracture, where the date of the skull fracture was a disputed issue at trial.  Averill waived any argument as to the admission of evidence regarding the child's rib fracture.  The court properly denied Averill's motion for judgment of acquittal given the extensive expert testimony introduced by the State from which a rational factfinder could find that Averill caused his child's death.  Additionally, although the State improperly introduced personal opinion as to the credibility of Averill's witnesses in closing argument, this error was harmless in the face of the court's curative instruction.  Finally, Averill's sentence was not improper.

The entry is:

Judgment affirmed.

Walter F. McKee, Esq., and Kurt C. Peterson, Esq. (orally), McKee Morgan, LLC, P.A., Augusta, for appellant Trevor Averill

Aaron M. Frey, Attorney General, and Katie Sibley, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellee State of Maine

Androscoggin County Unified Criminal Docket docket number CR-2021-1947
FOR CLERK REFERENCE ONLY